BRIARWOOD CLUB, LLC, Plaintiff-Appellant,

v.

VESPERA, LLC, Tony Pipito, LLC, Waukesha
County, Applewood Plastering Services, Inc.,
Dousman Electric Power Co., Inc.,
Payne & Dolan, Inc., Iron Development Icon
Construction, LLC, Lake County Engineering,
Inc., Country Stove and Fireplace, Inc., Kahle
Wholesale Flooring, Inc., Creative Metals, Inc.,
Prestige Electrical Services, Inc., LTD of
Wisconsin, Inc., Beer Capitol Distributing Lake
Country, LLC, Exclusive Millwork, Inc. and
Paul Steffes, Inc., Defendants,

WATERSTONE BANK,
Defendant-Third-Party Plaintiff-Respondent,

v.

Marsha RANIEWICZ and Richard Raniewicz,
Third-PartyDefendants,

STATE of Wisconsin, Intervenor.

Court of Appeals

*No. 2012AP2105. Submitted on briefs June 11, 2013.
—Decided September 4, 2013.*

2013 WI App 119

(Also reported in 839 N.W.2d 124.)

63

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Thomas P. Lyons* and *Bruce A. Ranta* of *Lyons & Ranta, LLP*, Brookfield.

On behalf of the defendant-third-party-plaintiff-respondent, the cause was submitted on the brief of *Elizabeth A. Neary* of *Grady, Hayes & Neary, LLC*, Waukesha.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶ 1. REILLY, J. Courts exercising equitable powers must behave akin to doctors operating under the

Hippocratic Oath: first, do no harm. We must do equity to all parties and not just the party seeking equitable assistance, within established rules and mindful of the maxim that "equity follows the law." 30A C.J.S. *Equity* § 135 (2013).

■■

¶ 2. It is within this context that we examine the equitable doctrine of "marshaling assets." Briarwood Club, LLC, the holder of a subordinate mortgage, requests that the doctrine of marshaling assets be applied to the detriment of fellow creditor Waterstone Bank, which holds a superior mortgage in addition to personal guarantees. The doctrine of marshaling assets provides that when one creditor (Waterstone) has an interest in two funds or properties held by a debtor, and another creditor (Briarwood) to the same debtor has an interest in only one of those funds or properties, a court may order the creditor with two funds to satisfy its claim out of the fund unavailable to the other creditor. *Andersen Yard Co. v. Citizens State Bank of Rice Lake*, 187 Wis. 60, 62–63, 203 N.W. 921 (1925). The doctrine is premised on the principle that justice requires that a party not "arbitrarily or capriciously ignore the rights of another creditor of the same debtor." *Id.* at 63.

¶ 3. Briarwood desires the doctrine be applied such that Waterstone must take the proceeds from the personal guarantees unavailable to Briarwood and apply those proceeds in a manner that inequitably diminishes Waterstone's debt position as it relates to Briarwood. Both Briarwood and Waterstone had loans with Vespera, LLC that were both backed by mortgages. Briarwood's mortgage was expressly subordinated to a commercial lender, i.e., Waterstone. Waterstone also had personal guarantees from the principals of Vespera. Briarwood's proposed application of the doctrine has

the effect of modifying Waterstone's debt position such that it would harm Waterstone while Briarwood would be made whole. The circuit court[1] ruled in favor of Waterstone, and we affirm.

## BACKGROUND

¶ 4. Vespera, a real estate developer, purchased three lots from Briarwood to develop a restaurant on one of the lots and residential condominiums on the two remaining lots. Vespera received primary financing of approximately $2.9 million from First Bank Financial Centre. First Bank secured its loan by taking a mortgage on the three lots and receiving personal guarantees from individual members of Vespera in the form of a pledge of real estate (a marina) and more than one million dollars in UPS stock. Vespera received secondary financing from Briarwood in the form of a $900,000 note. Briarwood secured its loan by taking a mortgage on the three lots subordinate to "a first mortgage in favor of a commercial, institutional lender." Vespera's obligation to First Bank was reduced by approximately one million dollars when the restaurant lot was sold.

¶ 5. Waterstone entered the scene when Vespera sought additional funds to develop the residential lots. Waterstone loaned $6.135 million to the project, of which $1.92 million was used to pay off Vespera's obligation to First Bank. Waterstone's loan was secured by taking a mortgage on the two remaining lots and receiving the same personal guarantees of the marina property and the UPS stock. Vespera defaulted, and

---

[1] The Honorable Patrick Snyder presided over the summary judgment hearing and issued an oral ruling. The Honorable J. Mac Davis signed the order, which was based on the oral ruling and from which this appeal is taken.

Briarwood and Waterstone obtained judgments of fore-closure in the amounts of $1,169,067 and $5,101,559, respectively. Waterstone expects to recover $1.89 million from the personal guarantees. The sheriff's sale has not yet occurred. The parties do not anticipate that the forthcoming sheriff's sale will generate a bid sufficient to cover both Briarwood's and Waterstone's judgment amounts.

## STANDARD OF REVIEW

¶ 6. Whether an equitable doctrine, such as the doctrine of marshaling assets, can be applied is a question of law that we review independently. *See Ocwen Loan Servicing, LLC v. Williams*, 2007 WI App 229, ¶ 6, 305 Wis. 2d 772, 741 N.W.2d 474. As the question of whether the doctrine of marshaling assets could be applied in this case was not challenged before the circuit court, we do not address Waterstone's argument on appeal that the element requiring that the funds be in the hands of a common debtor was not met.[2] *See Wirth v. Ehly*, 93 Wis. 2d 433, 443, 287 N.W.2d 140 (1980) ("[I]ssues not raised or considered in the trial court will not be considered for the first time on appeal.").

¶ 7. Instead, the issue before the circuit court, and now before us on appeal, is whether marshaling assets may be applied to diminish a senior creditor's

---

[2] Waterstone stated at the summary judgment hearing that "[w]e agree that marshaling of assets is in all likelihood appropriate in this case," and the circuit court premised its ruling on the belief that Waterstone was marshaling assets, albeit not in the manner suggested by Briarwood.

debt position as it relates to a junior creditor. We review the equitable determination of the circuit court for an erroneous exercise of discretion. *See Production Credit Ass'n of Madison v. Jacobson*, 131 Wis. 2d 550, 555, 388 N.W.2d 655 (Ct. App. 1986). The court's decision will be affirmed if it "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Richards v. Land Star Grp., Inc.*, 224 Wis. 2d 829, 847, 593 N.W.2d 103 (Ct. App. 1999) (citation omitted).

## DISCUSSION

■

¶ 8. Before addressing the doctrine of marshaling assets, it is helpful to understand what is not under consideration in this appeal. First, Briarwood and Waterstone agree that Waterstone has a priority interest in the Vespera property of $1.92 million under the doctrine of equitable subrogation.[3] Second, the amount that Waterstone can recover from the personal guarantees given by the individual members of Vespera has been estimated at $1.89 million; hence, $1.89 million of Waterstone's $5.1 million judgment can be satisfied without resorting to the Vespera property, leaving a balance of $3.21 million.

¶ 9. The issue thus presented is Briarwood's contention that the doctrine of marshaling assets requires

_____

[3] Briarwood and Waterstone agree that while Waterstone failed to obtain a subordination agreement at the time that Waterstone paid off the obligation to First Bank, Waterstone acquired priority for the $1.92 million paid to First Bank under the doctrine of equitable subrogation. *See Countrywide Home Loans, Inc. v. Schmidt*, 2007 WI App 243, ¶ 1, 306 Wis. 2d 200, 742 N.W.2d 901.

68

that the $1.89 million in anticipated proceeds from the personal guarantees should be applied against Waterstone's priority mortgage position of $1.92 million. The effect would be that Waterstone would recover the first $30,000 rather than the first $1.92 million generated by the sheriff's sale of the Vespera property. It also would mean that Briarwood would collect up to its full judgment before Waterstone can begin recovering the remaining $3.18 million outstanding on its judgment.

¶ 10. A hypothetical sales price will illustrate the effect of Briarwood's suggested application of marshaling assets. Assume the high bid at the sheriff's sale for the two lots is $2.4 million.[4] Under Briarwood's suggested remedy, Waterstone would get the first $30,000, Briarwood would then receive its $1.17 million, and Waterstone would get the balance of approximately $1.2 million. Briarwood thus would be made whole and Waterstone would sustain a loss of $1.98 million.[5] Compare this scenario to one where Waterstone does not apply the proceeds from its guarantees to its priority position as Briarwood proposes. Waterstone would get the first $1.92 million and Briarwood would get the balance of $480,000. Under this scenario, Waterstone incurs a loss of $1.29 million[6] and Briarwood incurs a loss of $689,000.[7] The application of marshaling assets in the manner suggested by Briarwood would lead to a result detrimental only to Waterstone.

---

[4] This was the value from the most recent appraisal of the property at the time of the summary judgment hearing.

[5] $1,890,000 + $30,000 + $1,200,000 = $3.12 million of Waterstone's $5.1 million judgment.

[6] $5,101,559 - (1,890,000 + $1,920,000) = $1,291,559.

[7] $1,169,067 - $480,000 = $689,067.

¶ 11. Briarwood relies primarily upon *Moser Paper Co. v. North Shore Publishing Co.*, 83 Wis. 2d 852, 266 N.W.2d 411 (1978), for its argument that the doctrine of marshaling assets requires Waterstone to apply the proceeds generated by the guarantees to its priority mortgage position. In *Moser*, the supreme court found that equity required a bank, which had security interests in two residences owned by the principals of a corporation, to foreclose on the residences before seeking satisfaction of any outstanding corporate debt from garnisheed funds of the corporation. *Id.* at 864–65. Moser argued that the doctrine of marshaling assets should be applied as the bank could satisfy its claim from both residences and the corporation's funds while Moser could resort to only the corporation's funds. *Id.* at 861. The court agreed with Moser that, under the circumstances of the case, the doctrine should be applied. *Id.* at 864. As part of its analysis, the court considered the value of the residences and the garnisheed funds, concluding that the bank could still resort to the garnisheed funds if the amount generated by the foreclosure sales was insufficient to cover its claim and that "[n]one of [the bank's] security will be taken from it." *Id.* at 865. In contrast, if the bank resorted first to the garnisheed funds to satisfy its claim, there would be no assets left for junior creditors such as Moser to apply toward their unsatisfied judgments. *See id.*

██

¶ 12. As is apparent in *Moser*, the doctrine of marshaling assets attempts to prevent the exhaustion of a common asset if a creditor has the ability to recoup its loan from an asset to which it alone has access. Briarwood turns this equitable doctrine on its head by arguing that Waterstone must take the asset to which only it has claim and apply it so as to diminish its debt

position in the common fund. This is not what *Moser* provides. The court in *Moser* found that the senior creditor would not be disadvantaged by marshaling assets (i.e., the bank's security would not be taken from it). *Id.* Marshaling assets is not to "operate as to work substantial injustice or injury to any party in interest." *Gilbert v. Crane*, 227 Wis. 455, 467, 279 N.W. 24 (1938) (citation omitted). Under Briarwood's proposal, Briarwood receives more proceeds from the anticipated sheriff's sale, and Waterstone less, than each would receive under normal foreclosure proceedings in accordance with their mortgage positions—a result not in accord with equity. The doctrine does not operate equitably if it diminishes the debt position of the senior creditor. Briarwood could have sought personal guarantees; the fact that it did not, while Waterstone did, should not operate to Waterstone's detriment.

¶ 13. Briarwood contends that it is entitled to this outcome as, when it initially agreed to a secondary mortgage position, the primary lender had sufficient security to cover most of its investment without resorting to the common asset. Briarwood cites no authority to support its proposition that this is an appropriate consideration for a court applying the doctrine of marshaling assets. Briarwood also asks us to speculate as to what would have been the result had Waterstone not loaned millions of additional dollars to this real estate development, which we will not do.

¶ 14. Briarwood's proposal unfairly enhances its rights above what it bargained for when it accepted a secondary mortgage position. The remedy sought by Briarwood anticipates disadvantaging Waterstone by diminishing its debt position under a theory of "equity." The circuit court carefully considered the facts and law and determined that Briarwood was "laying claim to

something that they never bargained for" and "that the marshaling in the manner that Waterstone has chosen is appropriate." The court properly exercised its discretion in declining to apply Briarwood's proposed application of the doctrine of marshaling assets.

*By the Court.*—Order affirmed.