Todd L. Prezioso and Corine M. Prezioso,
Plaintiffs-Respondents,

Evan L. Huff, Lucille M. Huff,
Gerald W. Mignon, Bernadine M. Mignon,
Siebers Irrevocable Real Estate Trust and
Robert Risser, Involuntary-Plaintiffs,

v.

Dennis J. Aerts, Sr. and Penny M. Aerts,
Defendants-Appellants.

Court of Appeals

*No. 2013AP2762. Submitted on briefs August 25, 2014.
—Decided November 4, 2014.*

2014 WI App 126

(Also reported in 858 N.W.2d 386.)

On behalf of the defendants-appellants,the cause was submitted on the briefs of *Christina L. Peterson* and *Michael J. Kirschling* of *Stellpflug Law, S.C.*, De Pere.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Richard M. Olk* and *John B. Rhode*, Antigo.

Before Hoover, P.J., Stark, J., and Thomas Cane, Reserve Judge.

¶ 1. CANE, J. Dennis and Penny Aerts appeal a judgment reforming a recorded Road Maintenance Declaration (the Declaration) to which their predecessors in interest were parties. Following a bench trial, the circuit court concluded the Declaration established an easement over a private road traversing the Aertses' property. It reformed the agreement to include legal descriptions of other properties adjoining the private road that were mistakenly omitted.

¶ 2. On appeal, the Aertses' primary argument is that the Declaration's description of the easement is insufficient to satisfy the statute of frauds, Wis. Stat.

§ 706.02, as a matter of law.[1] Accordingly, they argue the circuit court erred by relying on extrinsic evidence of intent to reform the agreement. They urge us to look to the underlying deeds to establish the rights and obligations of the parties, which undisputedly do not provide the adjoining landowners with an easement over the Aertses' parcel.

¶ 3. We conclude the circuit court properly exercised its equitable authority when it reformed the Declaration. It is only necessary that the instrument describe the easement location with "reasonable certainty." *See Wiegand v. Gissal*, 28 Wis. 2d 488, 492, 137 N.W.2d 412 (1965). The Declaration does so, and the extrinsic evidence relied on by the circuit court has an adequate foundation in the Declaration's language. Further, the evidence at trial was sufficient to establish mutual mistake. We therefore affirm.

## BACKGROUND

¶ 4. This case concerns six contiguous parcels of land on Lake Metonga in Forest County, Wisconsin. The parcels lie between two north-south roads, Risser Road on the west and Zinzer Road on the east. The westernmost property is owned by the Aertses. The next four parcels, from west to east, are owned by the Preziosos, the Huffs, the Mignons, and the Siebers Irrevocable Real Estate Trust ("the Trust"). A sixth parcel, south of the Aertses' parcel, belongs to Robert Risser.

¶ 5. Prior to 1983, Ethel Risser owned all six parcels. She and her husband operated a resort on the land, which consisted of several cabins. A private road traversed a portion of the property from east to west

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

and was initially used for access to and from Zinzer Road. When Risser Road was built in the 1970s, the Rissers connected it with the private road on the parcel now belonging to Robert Risser.

¶ 6. Beginning in 1983, the Rissers began selling the cabins and land. In 1983, they sold the parcel now owned by the Aertses to Lawrence and Hazel Bryant on a land contract. In 1986, the Rissers sold the eastern-most parcel, adjacent to Zinzer Road, to Robert and Jean Siebers (the Trust's predecessor in interest). Both deeds reserved an easement over the private road in favor of the Rissers and their successors in interest. The easement in the Bryants' deed commenced at Zinzer Road and terminated at their east property line.

¶ 7. The Rissers sold the Mignons their lot on October 18, 1988. The deed in satisfaction of the land contract established "a permanent and perpetual ease-ment across an existing driveway to Zinzer Road across the adjacent lot to the east . . . ." The Mignons found ingress and egress via Zinzer Road unacceptable, and they, the Bryants, the Siebers, and the Rissers agreed to the Declaration, which contains the easement language at issue in this appeal.

¶ 8. The Declaration begins by identifying the Rissers, Siebers, Bryants, and Mignons as the "owners of the land described to Schedule A attached to and made a part of this agreement." However, Schedule A contains only a legal description of the Bryants' prop-erty, now owned by the Aertses. The Declaration states, "The land so described [in Schedule A] contains a parcel to be used for road purposes for the property adjoining said road." It establishes a "permanent easement and right-of-way," and further states, "Each party shall have full use and enjoyment of the roadway, except the right to block it . . . ."

¶ 9. The parties believed the Declaration would allow the owners to traverse the private road to reach either of the public roads, Zinzer Road on the east and Risser Road on the west. The Declaration also included many provisions related to maintenance and upkeep of the road. It was recorded on May 25, 1989.

¶ 10. Around the same time the parties reached agreement on the Declaration, a certified survey map was filed with the Forest County Register of Deeds. The survey, which was commissioned as part of the Rissers' efforts to divide the resort property, shows a dashed line labeled "Existing Private Rd." intersecting the land between the Aertses' and the Siebers' parcels. Only the land between Zinzer Road and the eastern boundary of the Aertses' parcel is shown; both the Aertses' and the Rissers' parcels to the west are omitted. As a result, future grants referring to the certified survey map to define the scope of easement rights would not include easement rights over the Aertses' land.

¶ 11. Ronald Sadofsky, the Preziosos' predecessor in interest, purchased a lot in 1989. The deed established "a permanent and perpetual, but nonexclusive, easement for ingress and [egress] . . . along the existing private roadway" identified in the certified survey map. The Huffs, who purchased their property in 1990, took title under similar language. When the Preziosos took title from Sadofsky in 2004, their deed also noted the existence of an easement for ingress and egress on the existing private road shown on the certified survey map.

¶ 12. The Aertses took title from the Bryants in 2007. The Aertses' deed excludes any "restrictions, reservations, easements, covenants, conditions and public & private rights of use of record" from the grant.

The Aertses' title insurance policy identified and specifically excluded from coverage any claim based on the recorded Declaration.

¶ 13. After the Aertses blocked the private road near their eastern property line with boulders, the Preziosos filed suit. The Preziosos sought to enforce a permanent and perpetual easement on the private road traversing the Aertses' parcel so as to permit access to and from Risser Road. The Preziosos also sought a preliminary injunction ordering removal of the boulders, which the circuit court granted. The other owners of the properties abutting the private road were eventually added to the action, and the Aertses counterclaimed for trespass.

¶ 14. The Aertses filed a motion for summary judgment, arguing the Declaration was ambiguous and improperly omitted a legal description of the easement. The court denied the motion, concluding it required testimony from the parties regarding their intent. The court also indicated it might need to reform the agreement.

¶ 15. A bench trial was held at which several parties to the Declaration, as well as the Preziosos and Dennis Aerts, testified. Dennis Wydeven, the attorney who drafted the Declaration, also testified and stated he mistakenly omitted the legal descriptions of several properties abutting the roadway.

¶ 16. The court rendered an oral decision shortly after the trial concluded. It found that the parties to the Declaration intended to provide landowners east of the Bryant parcel with a means of ingress and egress between their property and Risser Road. The court recognized the Declaration was ambiguous because Schedule A "does not completely describe all of the properties of all of the owners who are signatories to

that agreement." However, the court found the easement sufficiently definite despite that omission.

¶ 17. In doing so, the circuit court distinguished the primary case on which the Aertses relied, *303, LLC v. Born*, 2012 WI App 115, 344 Wis. 2d 364, 823 N.W.2d 269. The court held that under *303, LLC*, the Declaration described the easement with sufficient specificity such that parol evidence was admissible for the purpose of identification:

> I have reviewed the case cited by the [Aertses]. I think it is somewhat distinguishable in certain respects. That holding indicates that if the description is too indefinite . . . you cannot supplement it with parol[] evidence. However, I suggest that there's some foundation in the agreement that is sufficiently definite that would allow parol[] evidence to fill in the blanks . . . .
>
> I think that the example that they use in the case is . . . a fence line. All right. That somewhat is indefinite. But it can be filled in by reference to an existing fence. In this case the foundation [for the admission of parol evidence] was laid . . . .
>
> [The Declaration] indicates that the easement road is currently existing at the time. It indicates that the road is for ingress and egress to each of these parcels. It also states the parcels are adjacent. The property in Schedule A was specifically IDed as the Bryant[s'] property. And . . . in fact, they are all adjacent properties and they all have [a] road going through [them]. An individual carefully reviewing that agreement and referring to the owners['] name[s] therein [could find] the location of the properties and the existence of a road, [and] you could determine the legal description of the owner parcels.

¶ 18. The court also concluded the legal descriptions of the signatories' properties were omitted as a result of a mutual mistake, entitling the Preziosos to

reformation. According to the court, "all we really are doing by reforming the deed is to include the legal description of [the] owners[' parcels] and potentially the legal description of a road from Zinzer to Risser." The court's written decision reforms the Declaration to add the legal descriptions of the omitted parcels to Schedule A.[2]

## DISCUSSION

¶ 19. When a court sits in equity, we review some aspects of its decision independently. "When the evidence is documentary, an appellate court may interpret such evidence for itself and is as equally competent as the trial court to do so." *Zurbuchen v. Teachout*, 136 Wis. 2d 465, 471, 402 N.W.2d 364 (Ct. App. 1987). Whether an equitable doctrine can be applied in a particular case is also a question of law that we review independently. *Briarwood Club, LLC v. Vespera, LLC*, 2013 WI App 119, ¶ 6, 351 Wis. 2d 62, 839 N.W.2d 124.

¶ 20. Other aspects of our review are more deferential, however. If equitable relief is available, we will not reverse a circuit court's determination of whether to award such relief unless the court has erroneously exercised its discretion. *Id.*, ¶ 7. We will affirm if the court examined the relevant facts, applied a proper standard of law, and used a demonstrated rational

---

[2] The court did not reform the Declaration to include a legal description of the private road. We presume the parties agree as to the current location of the road, as no one has challenged that aspect of the circuit court's decision. *See Waushara Cnty. v. Graf*, 166 Wis. 2d 442, 451, 480 N.W.2d 16 (1992) (appellate courts need not consider or decide issues which are not specifically raised on appeal).

process to reach a conclusion that a reasonable judge could reach. *Id.* The court's factual findings will not be reversed unless they are contrary to the great weight and clear preponderance of the evidence. *First Nat'l Bank of Kenosha v. Scalzo*, 70 Wis. 2d 691, 700, 235 N.W.2d 472 (1975).

¶ 21. The Aertses' primary argument on appeal is that the Declaration violates the statute of frauds because its description of the easement property is insufficient. The statute of frauds governs every transaction by which an interest in land may be affected. Wis. Stat. § 706.001(1). "An easement is an interest in land and therefore governed by Wis. Stat. ch. 706." *Smiljanic v. Niedermeyer*, 2007 WI App 182, ¶ 10 n.3, 304 Wis. 2d 197, 737 N.W.2d 436.

¶ 22. The statute of frauds "requires that if one wishes to enforce a [contract affecting real estate], the contract must be in writing, set forth all the essential terms with particularity, and be signed by all parties to the transaction." *303, LLC*, 344 Wis. 2d 364, ¶ 1. Failure to comply with the statute renders the contract void. *Zapuchlak v. Hucal*, 82 Wis. 2d 184, 191, 262 N.W.2d 514 (1978).

¶ 23. By requiring that the writing contain all essential terms, the statute obligates the parties to identify the land affected with some specificity. *See* Wis. Stat. § 706.02(1)(b). However, a legal description is not required. *Anderson v. Quinn*, 2007 WI App 260, ¶ 32, 306 Wis. 2d 686, 743 N.W.2d 492. It is only necessary that the writing "describe the property to a reasonable certainty." *State v. Conway*, 34 Wis. 2d 76, 85, 148

N.W.2d 721 (1967); *Wiegand,* 28 Wis. 2d 488 at 492. "Reasonable certainty" means that " 'by the aid of the facts and circumstances surrounding the parties at the time the court can with reasonable certainty determine the land which is to be conveyed . . . .' " *Anderson,* 306 Wis. 2d 686, ¶ 30 (quoting *Kuester v. Rowlands,* 250 Wis. 277, 279, 26 N.W.2d 639 (1947)). Accordingly, parol evidence is generally permissible to establish identity. *See Conway,* 34 Wis. 2d at 85.

¶ 24. Despite this general rule, the Aertses contend the circuit court erred by considering oral testimony when it interpreted the Declaration. The Aertses rely on a line of cases culminating with *303, LLC,* for the proposition that a conveyance that does not include a legal description is void. They argue that, in the absence of a legal description, "it is proper to exam[ine] the deeds that established the roadway in question."

¶ 25. The Aertses proceed from a false premise. A conveyance does not fall out of favor with the statute of frauds simply because it lacks a legal description of the interest conveyed. *See Anderson,* 306 Wis. 2d 686, ¶ 32. The controlling principle is that we will give effect to the intention of the parties, even if they have expressed their desires using less than perfect language. *See Konneker v. Romano,* 2010 WI 65, ¶ 26, 326 Wis. 2d 268, 785 N.W.2d 432. The primary source of the parties' intent is what is written within the four corners of the instrument. *Id.* If that language is unambiguous, the inquiry ends and we apply the contract language as written. *Id.* If the language is ambiguous—meaning it is susceptible to more than one reasonable interpretation —then the parties may introduce other evidence to demonstrate the intent behind the language. *Id.*

¶ 26. Here, the parties agree the Declaration is ambiguous. The Declaration establishes an easement over "a parcel to be used for road purposes for the property adjoining said road." The property adjoining the road is (supposedly) identified in Schedule A, but the specific portion of those properties constituting the road is not stated with precision. Thus, it is not apparent from the four corners of the document where, precisely, the easement is located on the signatories' parcels.

■■

¶ 27. Mere ambiguity, however, does not render a contract unenforceable vis-à-vis the statute of frauds. Rather, when a conveyance includes a description of property that can be applied in multiple ways, the statute of frauds requires that parol evidence of intent be connected in some way to the language of the agreement. *See Stuesser v. Ebel*, 19 Wis. 2d 591, 594, 120 N.W.2d 679 (1963). Otherwise, courts would effectively be supplying essential terms of the bargain for the parties. *Thiel v. Jahns*, 252 Wis. 27, 30–31, 30 N.W.2d 189 (1947). The test is an objective one, assessing whether a reasonable third party would be able to pinpoint the specific property to which the parties were referring. *See 303, LLC*, 344 Wis. 2d 364, ¶¶ 11–12.

■

¶ 28. Some examples are helpful. In *Thiel*, our supreme court determined an instrument conveying the "house at Little Chicago" was insufficient because it was not clear what property was included in the sale. *Id.* at 30. The house sat on one and one-half acres of land, a portion of which was enclosed so as to make a complete living unit. *Id.* There was disputed testimony about what property was to be sold. *Id.* The court concluded that to give effect to the agreement, it would

have to use parol evidence not for the proper purpose of identification, but to establish what property was included in the sale:

> In order to establish the description of the land intended to be conveyed it is necessary to give independent effect to the parol understanding as to the quantity of land involved. This is not identification. It is supplying a portion of the description by parol and this is clearly contrary to the statute and to the rule . . . .

*Id.* Thus, *Thiel* establishes that parol evidence cannot be used to supply an essential term of the agreement.

¶ 29. The court in *Stuesser*, 19 Wis. 2d at 595, found that case to be "on all fours" with *Thiel*, and expanded upon *Thiel*'s rationale. The conveyance in *Stuesser* described the property as "real estate owned by the [Ebels] and located in the Town of Oak Grove, now known as the 'Dobie Inn' and used in the business of the [Ebels]." *Id.* at 592. The court found this description "per se . . . indefinite" and resorted to extrinsic evidence. *Id.* at 594. This only complicated matters, for the parol evidence established that the Dobie Inn was situated on a portion of lots 6 and 7, both of which the Ebels owned in their entirety. *Id.* at 595.

¶ 30. The *Stuesser* court concluded that "[b]efore parol evidence can be used to make reasonably certain an indefinite description of property for purposes of satisfying the statute of frauds, the description in the memorandum must furnish some foundation, link, or key to the oral or extrinsic testimony [that] identifies the property." *Id.* at 594. The contract language there gave "no indicia" that only the land occupied by the inn was to be included in the sale, although the court acknowledged the Stuessers likely knew that was all they were purchasing:

730

> It is not what the parties to the contract know but what they put in the contract as the description, that is the test. All the terms of an oral agreement may be definite but the contract is void unless it or a memorandum meets the call of the statute. The indefiniteness of a description for the purpose of the statute of frauds is not to be treated as an ambiguity in the contract and resolved by principles applicable to ambiguities of valid contracts. . . . Not much would be left of the statute of frauds if all parol evidence were probative to make certain the uncertainties of a memorandum.

*Id.* at 596. Under *Stuesser*, parol evidence relating to the description of the land affected has probative value only if it can be connected in some way to the instrument's language.

¶ 31. Finally, we reach the primary case on which the Aertses rely, *303, LLC*. There, the Borns accepted a written offer to purchase their fifty-acre farm and home. *303, LLC*, 344 Wis. 2d 364, ¶ 4. The offer contained a provision giving 303, LLC a "right of First refusal on remaining Acreage." *Id.*, ¶ 2. "Remaining Acreage" was not defined by the agreement, and parol evidence established that at the time the offer was accepted, the Borns owned an additional eighty acres of land, only a portion of which was contiguous to the fifty-acre parcel. *Id.*, ¶ 4. Consequently, "[a] disinterested person examining the offer to purchase could not specify with reasonable certainty what land was subject to the right of first refusal." *Id.*, ¶ 11.

¶ 32. The *303, LLC* court further elaborated upon *Stuesser*'s rule that parol evidence must be connected to the conveyance language in some articulable way. "For example, the 'key' or 'link' provided by the description of 'enclosed by a fence' . . . lends sufficient definiteness to the property description such that parol evidence pro-

vided by a surveyor related to the fence would allow a third party to pinpoint a specific property." *303, LLC*, 344 Wis. 2d 364, ¶ 12 (citing *Stuesser*, 19 Wis. 2d at 595). There is a clear distinction between the proper admission of extrinsic evidence for the purpose of applying a description to identified property versus the improper supplying of a description or adding to a description that is on its face insufficient. *Id.*, ¶ 16.

■■■

¶ 33. Of course, the question of indefiniteness depends largely on the facts of the case. *Conway*, 34 Wis. 2d at 84–85. Here, we conclude the easement description was sufficient such that parol evidence was necessary only for identification purposes. The Declaration uses the words "easement," "road," "private road," "right-of-way" and "roadway" interchangeably. It would be apparent to a reasonable third party reading the agreement that the easement is commensurate with the road traversing the signatories' parcels. This is a sufficient "key" or "link" to permit identification by parol. *See 303, LLC*, 344 Wis. 2d 364, ¶¶ 11–12.

¶ 34. Further, there is no question what road is referenced because the Declaration identifies the owners of the land traversed by the road, even if Schedule A by mistake contained the description of only one parcel. The Declaration tells us all the land in question is adjacent to the road, and provides the legal description of one such property. The other properties therefore become easily identifiable. The Aertses have not directed us to any evidence suggesting the signatories owned contiguous property in any other location so as to create uncertainty about the properties or road subject to the easement.

¶ 35. Although it is difficult to describe part of a larger parcel without a legal description, it is not

impossible. *See Anderson*, 306 Wis. 2d 686, ¶ 32. In this case, the land burdened by the easement can be determined with reasonable certainty. The circuit court specifically found that although the road was not "precisely described" in the Declaration, "the road was in existence, the parties knew of its existence, and it has remained in the same place from the existence of the resort to the present time." The description of the easement is not so wholly insufficient that the Declaration must be deemed void as a matter of law.

¶ 36. We must also address the Aertses' belief that, in the absence of a legal description, "it is proper to exam[ine] the deeds that established the roadway in question" because the deeds are "the only way to render the defective writing intelligible." The Aertses wish the deeds to control because, taken collectively, they do not permit the other landowners to travel beyond the eastern boundary of the Aertses' property.

■

¶ 37. It is true that when an easement is created by deed, we will examine the deed to construe the relative rights of the landowners. *Konneker*, 326 Wis. 2d 268, ¶ 26. But here, the easement was not created by deed. The deeds were only significant to the extent they established the legal state of affairs that existed at the time the parties agreed to the Declaration—the "surrounding circumstances." *See Kernz v. J.L. French Corp.*, 2003 WI App 140, ¶ 10, 266 Wis. 2d 124, 667 N.W.2d 751. Indeed, if the parties simply wished to maintain the status quo under the deeds, the Declaration's easement language would not have been necessary.

■

¶ 38. The Aertses observe that Schedule A is incomplete and includes only a description of their parcel, rather than the land owned by all the signato-

ries to the Declaration. That observation does not help the Aertses. Pursuant to the evidence adduced at trial, the omission was the obvious result of a mutual mistake entitling the Preziosos to reformation. "Wisconsin courts have long recognized that a court in equity can reform written instruments that, by mutual mistake, do not express the true intentions of the parties." *Chandelle Enters., LLC v. XLNT Dairy Farm, Inc.*, 2005 WI App 110, ¶ 18, 282 Wis. 2d 806, 699 N.W.2d 241. A mistake is a misconception or misunderstanding as to meaning. *Security Pac. Nat'l Bank v. Ginkowski*, 140 Wis. 2d 332, 337–38, 410 N.W.2d 589 (Ct. App. 1987) (citing OXFORD UNIVERSAL DICTIONARY 1263 (rev. 3d ed. 1995) and WEBSTER'S NEW INT'L DICTIONARY 1446 (1976)).

¶ 39. A mutual mistake "must be established by clear, convincing evidence that both parties intended to make a different instrument than the one signed and both agreed on facts different than those set forth in the instrument." *Newmister v. Carmichael*, 29 Wis. 2d 573, 577, 139 N.W.2d 572 (1966). Here, Wydeven, the drafting attorney, testified the legal descriptions of several properties adjacent to the road were mistakenly omitted from Schedule A. The parties believed the legal descriptions of all affected parcels would be included in the Declaration, but there was some difficulty in obtaining the signatures of the parties, and all but the legal description of the Bryants' parcel were lost in the shuffle. Wydeven's testimony provided sufficient evidence of mutual mistake.

 

¶ 40. Finally, the Aertses vaguely suggest it would be inequitable to bind them to the Declaration as bona fide purchasers. It is a "well-known and widely accepted principle . . . that courts will not reform if the rights of

innocent third parties, such as bona fide purchasers or others who have acquired intervening rights who cannot be placed in 'statu quo,' are affected." *Chandelle Enters.*, 282 Wis. 2d 806, ¶ 18 (citing *Holton State Bank v. Greater Milwaukee Food Merchants Ass'n*, 9 Wis. 2d 95, 100, 100 N.W.2d 322 (1960)).

██

¶ 41. The Aertses' assertion that they were innocent parties contradicts the circuit court's credibility findings and the documentary evidence adduced at trial. The court specifically found Dennis Aerts to be evasive, and it deemed his testimony that he never knew about or saw the Declaration prior to purchasing his parcel "clearly incorrect." The court concluded if Dennis had searched the title history of the property as he claimed, he would have known about the Declaration because it was recorded. Further, the court noted the Declaration was disclosed in the Aertses' title report:

> I think . . . he knew what [the title report] said. And I think he knew that it referenced the . . . [Declaration] because, in fact, it does. So when he testified in court under oath that he never knew about the [Declaration] until he got a letter from [plaintiff's counsel], I find that to not be credible. So, I have . . . resolve[d] the issues of . . . credibility against Mr. Aerts.

"[W]hen the trial judge acts as the finder of fact, he [or she] is the ultimate and final arbiter of the credibility of witnesses." *Klein-Dickert Oshkosh, Inc. v. Frontier Mortg. Corp.*, 93 Wis. 2d 660, 663, 287 N.W.2d 742 (1980).

¶ 42. In sum, we conclude the circuit court properly exercised its equitable authority to reform the Declaration. The Declaration complied with the statute of frauds by describing land with reasonable certainty, and the extrinsic evidence relied on by the circuit court

had an adequate foundation in the contract language. Finally, the evidence was sufficient to find mutual mistake justifying reformation. Accordingly, we affirm.[3]

*By the Court.*—Judgment affirmed.

---

[3] Because we affirm, we have no need to reach the Aertses' secondary argument regarding trespass, which assumes the other property owners have no easement extending to the west beyond the Aertses' eastern property line.