COURT OF APPEALS
DECISION
DATED AND FILED

December 18, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2526**

STATE OF WISCONSIN

Cir. Ct. No. 2020CV219

IN COURT OF APPEALS
DISTRICT IV

---

JODY BOQUIST,

    PLAINTIFF-THIRD-PARTY PLAINTIFF-RESPONDENT,

THE JOE G. BALLMER TRUST DATED 12/5/2008,

    PLAINTIFF-RESPONDENT,

  V.

JANE BALLMER, JANET BALLMER, JEFFREY BALLMER, JACQUELINE O'NEAL, JULIA ENGLER, AND JAMES BALLMER,

    DEFENDANTS-COUNTER CLAIMANTS-APPELLANTS,

  V.

JOSEPH G. BALLMER AND JON D. BALLMER,

    THIRD-PARTY DEFENDANTS-COUNTER CLAIMANTS-THIRD-PARTY PLAINTIFFS-RESPONDENTS,

BALLMERLAND FARMS,

    INTERVENOR-PLAINTIFF-THIRD-PARTY DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Rock County: DERRICK A. GRUBB, Judge. *Affirmed.*

Before Graham, P.J., Blanchard, and Kloppenburg, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  When he died in 1981, Kenneth Ballmer owned farmland, which passed through probate proceedings to his widow and their ten children.  In this litigation, commenced in 2020, some of the siblings moved to partition the farmland, and the circuit court granted the partition.  Six of the siblings ("the partition opponents") appeal the order granting partition.  The partition opponents argue that the circuit court erred in rejecting, on summary judgment, their two alternative arguments challenging the partition.

¶2      Both of these arguments are based on the same document, a limited partnership agreement ("the partnership agreement" or "the agreement").  The partnership agreement was entered into in or about 1983 by Kenneth's widow and the ten siblings—both the siblings who would eventually seek the farmland partition ("the partition advocates") as well as the partition opponents.[1]

¶3      The partition opponents' first argument is that the partition is not available because the 1983 partnership agreement conveyed the ownership of the farmland to the partnership.  They argue that the partnership agreement constituted a conveyance because it satisfied the statute of frauds requirements for the

---

[1] A number of persons referred to in this opinion have the surname Ballmer.  For ease of reference, when a first name appears, the omitted last name is Ballmer.

conveyance of real property contained in WIS. STAT. § 706.02(1) (2023-24).[2] We reject this argument based on our conclusion that the partnership agreement failed to satisfy at least one formal requisite for a transaction to qualify as a valid conveyance, based on undisputed facts in the summary judgment materials. The unmet requisite is that the agreement did not identify the real property interests that were purportedly conveyed to the partnership. *See* § 706.02(1)(c).

¶4 The partition opponents' alternative argument is that the partition advocates breached the partnership agreement in seeking the partition. Our conclusion on this issue follows from our conclusion on the first issue. We conclude that the breach of contract theory rests on the faulty premise that the partnership agreement required each partner to contribute to the partnership the partner's individual interest in the farmland. While the partnership agreement may be ambiguous for other purposes, there is no ambiguity about the fact that it does not include that requirement.

¶5 Accordingly, we affirm the challenged circuit court ruling.

**BACKGROUND**

¶6 Before he died in February 1981, Kenneth owned all of the farmland at issue.[3] Through a probate court judgment, his estate's interest in the farmland

---

[2] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[3] It is undisputed that this farmland consists of three parcels of largely unimproved agricultural land, all in Rock County; no further details regarding the nature of the farmland matter to our analysis.

3

was assigned to his widow, Lillian (a one-third interest), and to each of their ten children (one 1/15th interest to each).

¶7     In or about 1983, Lillian and each of the Ballmer siblings executed the document central to this appeal, which is titled "Ballmerland Farms, Limited Partnership Agreement."  We save for the Discussion section below a summary of pertinent aspects of the agreement.  It is sufficient as general background to note that the agreement created a limited partnership called Ballmerland Farms ("the partnership") and that the agreement is now interpreted differently by the two sides in this appeal.

¶8     In March 2020, this action was commenced in the circuit court by the partition advocates, Jody Boquist (formerly Jody Ballmer) and the Joe G. Ballmer Trust Dated 12/5/2008.[4]  The complaint was amended, and eventually came to name as defendants six of the Ballmer siblings.  The first cause of action is the focus of this appeal.  It sought physical partition of the farmland under common law and statutory standards.  The partition advocates asked the court to award them "all right, title, and interest" to portions of farmland that should be "equitably partitioned to them."

¶9     To resolve the issues in this appeal, it is not necessary for us to detail any of the other claims, counterclaims, or extensive procedural maneuvers by

---

[4] The Joe G. Ballmer Trust Dated 12/5/2008 came to control the farmland originally inherited by Joe and Jon.

Separately, some pertinent circuit court orders in this case were issued by the Hon. Daniel T. Dillon and others by the Hon. Derrick A. Grubb, with Judge Grubb issuing the final order on October 29, 2024.  The parties do not provide any reason for this opinion to identify which judge issued any particular order, and therefore we use the generic "circuit court" reference for the balance of this opinion.

multiple parties that followed the filing of the initial complaint. What matters in this appeal is that the litigation culminated in the circuit court order, now challenged by the partition opponents, which in pertinent part directed summary judgment and a judgment of partition in favor of the partition advocates. For reasons explained below, the parties' arguments may be resolved on our de novo review, based on undisputed facts, of the circuit court's decisions to reject the partition opponents' alternative arguments that: (1) when it was executed, the partnership agreement constituted a conveyance of real property under the statute of frauds and, even if it did not, (2) the partition advocates breached the agreement by seeking partition.

## DISCUSSION

## I. The agreement did not constitute a conveyance of real property

¶10 We now summarize pertinent features of the partnership agreement. Then we address the applicable statute of frauds provision and our standard of review. After that, we explain why we conclude that the agreement unambiguously failed to identify the real property interests purportedly conveyed to the partnership, as would be required to create a valid conveyance under the formal requisite stated in WIS. STAT. § 706.02(1)(c).

### A. Pertinent agreement features

¶11 The partnership agreement signed by Lillian and the ten siblings created a partnership as of August 1, 1982.

¶12 One introductory "recital" states that the "parties hereto have contributed property and their interest in the Estate of Kenneth R. Ballmer,

deceased, for the purpose of continuing the farming operation located at Route #4, Janesville, Wisconsin."

¶13    The "Terms of the Agreement" follow the recitals. One term addresses "Capital" and states, "The capital of the partnership shall be contributed by the partners as follows." A table is then provided. The table lists respective percentage interests for each partner, with a corresponding "amount of capital" expressed in dollars. For example, the first entry states:

| NAME | PERCENTAGE INTEREST | AMOUNT OF CAPITAL |
| --- | --- | --- |
| Jeffrey Ballmer | 8.33 | $21,718.87 |

¶14    The agreement then states that the "foregoing capital represents undivided interests in assets and solely owned property, subject to liabilities as more fully set forth in a list of assets, a copy of which is attached hereto, marked Schedule A and expressly incorporated herein." No party has identified a Schedule A or equivalent document.

¶15    Deeper into the terms of the agreement, contained in a paragraph discussing the "Limited Partners," is the following passage: "No Limited Partner shall have the right to demand or receive property other than cash in return for his contribution, and no Limited Partner shall have priority over any other Limited Partner as to contributions to capital or as to compensation by way of income."

**B.    Legal standards**

¶16    A "conveyance" of real estate is defined in WIS. STAT. § 706.01(4) as a written instrument that satisfies the requirements of WIS. STAT. § 706.02. Our decision on this issue is based on one of the seven formal requisites for a conveyance stated in § 706.02(1), namely, subpart (1)(c): the instrument must "[i]dentif[y] the interest conveyed, and any material term, condition, reservation,

exception or contingency upon which the interest is to arise, continue or be extinguished, limited or encumbered."

¶17 We review de novo the circuit court's summary judgment determinations, applying WIS. STAT. § 706.02(1)(c) to the undisputed facts, following the established standards used by the circuit court and set forth in WIS. STAT. § 802.08. *See Town Bank v. City Real Est. Dev., LLC*, 2010 WI 134, ¶31, 330 Wis. 2d 340, 793 N.W.2d 476.

¶18 In addition, we interpret the language of the partnership agreement to determine whether it satisfies the statute of frauds. *See MPI Wright LLC v. Goodin Co.*, 2025 WI App 18, ¶21, 415 Wis. 2d 590, 19 N.W.3d 582. "[I]t is not the intent of the parties which governs in respect to satisfying the formal requisites of the Statute of Frauds. A reasonable certitude in respect to the subject matter of the agreement must be expressed in the contract itself." *Trimble v. Wisconsin Builders, Inc.*, 72 Wis. 2d 435, 442, 241 N.W.2d 409 (1976). "Put another way, the test of whether a contract complies with the pertinent requirements of the statute of frauds 'is not what the parties to the contract know but what they put in the contract.'" *MPI Wright*, 415 Wis. 2d 590, ¶21 (quoting *Stuesser v. Ebel*, 19 Wis. 2d 591, 596, 120 N.W.2d 679 (1963)).

¶19 "In deciding whether a document conforms to the statute of frauds, we may consider the language of the entire document." *Id.* "The interpretation of such documentary evidence is a question of law that we review independently." *Id.* (citing *Prezioso v. Aerts*, 2014 WI App 126, ¶19, 358 Wis. 2d 714, 858 N.W.2d 386).

¶20 Evidence extrinsic to a purported conveyance document may be considered to determine whether the statute of frauds applies when the document reflects ambiguity, but not to the degree that generally applies in the contract law context. *Id.*, ¶39. "The indefiniteness of a description for the purpose of the

7

statute of frauds is not to be treated as an ambiguity in the contract and resolved by principles applicable to ambiguities of valid contracts," because "[n]ot much would be left of the statute of frauds if all [extrinsic] evidence were probative to make certain the uncertainties of a [contract]." *Id.* (quoting *Stuesser*, 19 Wis. 2d at 596) (alterations in *MPI Wright*). "[T]he statute of frauds requires that parol evidence of intent be connected in some way to the language of the agreement. Otherwise, courts would effectively be supplying essential terms of the bargain for the parties." *Id.* (quoting *Prezioso*, 358 Wis. 2d 714, ¶27) (alteration in *MPI Wright*).

### C. Analysis

¶21 We discern potential ambiguities in the partnership agreement on various topics. But this much is unambiguous. The agreement obligated the partners to make future contributions to the partnership as set forth in the table, with each contribution valued in a dollar amount. Further, we agree with the partition advocates that the partnership agreement unambiguously fails to identify interests in the farmland that the partners were conveying to the partnership. That is, we disagree with the partition opponents' argument that the agreement can reasonably be interpreted to obligate the partners to contribute to the partnership, at any time, their respective interests in the farmland. Put simply, the agreement does not state that any property is being conveyed or even that it must later be conveyed by anyone.

¶22 We begin with the recital stating that "the parties hereto have contributed property and their interest in" Kenneth's estate "for the purpose of continuing the farming operation located at Route #4, Janesville, Wisconsin." The meaning of this recital is not entirely clear. But we reject the suggestion by the partition opponents that this recital could be reasonably interpreted to create an obligation by the partners to contribute to the partnership by conveying their

respective interests in the farmland to the partnership. This is merely an expression of the shared goal of continued farming on the farmland, which the recital describes as a goal that would be consistent with the parties' *past* contributions to the family farm ("have contributed property and their interest"). That is, the word "contributed" appears in both the recital and in the terms of the agreement, but in the recital, "contributed" describes past support of the farming operation, while in the terms of the agreement, "contributed" describes additions to the partnership that "shall" be made. Further, the prospect of an ongoing partnership with the goal of "continuing the farming operation" is not necessarily inconsistent with continued ownership of the farmland by the heirs as tenants in common. Tenants in common can agree to support a common farming operation.

¶23    Thus, we do not discern in the recital any ambiguity that could call for the possibility of limited consideration of extrinsic evidence. *See MPI Wright*, 415 Wis. 2d 590, ¶39. There is no evidence of intent extrinsic to the partnership agreement that is *connected to the language of the agreement* that could carry the day for the partition opponents. *See id.*

¶24    It is the same when we turn to the terms of the agreement, which state that the contributions of partnership capital "shall be contributed" by each partner, as delineated in two corresponding metrics reflected in the table. One metric is the percentage interest of each partner, with the siblings each having an 8.33 percent interest, and Lillian having 16.70 percent. The other metric is the actual "amount of capital," expressed in dollars, with the siblings each being required to make a $21,718.87 contribution, and Lillian a $43,459.53 contribution. There is no reasonable construction of this language under which each partner necessarily had to convey to the partnership that partner's ownership interest in the farmland. *See* WIS. STAT. § 706.02(1)(b).

¶25 As for the reference to the initial capital contributions "represent[ing] undivided interests in assets and solely owned property, subject to liabilities" delineated in the missing Schedule A, this merely clarifies that the partnership would control the assets and property contributed to it. This does not indicate that farmland had to be conveyed to the partnership. The absence of a Schedule A might present a puzzle for purposes of addressing other issues that could arise from the terms of the agreement. But it does not affect our analysis here. Neither side develops an argument that the reference to Schedule A, either in itself or when construed with other provisions of the agreement, sheds light on the meaning of the recital, of the table listing capital contributions to be made, or of such phrases as "shall be contributed by the partners" or "amount of capital," as could be pertinent to the application of WIS. STAT. § 706.02(1)(c).

¶26 It is true, as the partition opponents repeatedly emphasize, that the amounts of initial capital contributions that the partners were required to, at some point, contribute to the partnership match the estimated values of their respective percentage interests in the farmland held by Kenneth's estate. But this merely provides an explanation for the amounts that were set as the initial contributions, and it does not support the proposition that the partners were conveying real estate interests to the partnership. Put differently, the agreement to initially fund the partnership for purposes of continuing farming operations at levels matching relative partner interests in the farmland distributed through Kenneth's estate does not establish that the partners were conveying their property interests to the partnership.

¶27 To the extent that the partition opponents also base their position on any of the terms in WIS. STAT. § 706.02(2), this argument is unsupported.[5] They

---

[5] WISCONSIN STAT. § 706.02(2) states:

(continued)

completely fail to identify any of the following, as could be relevant to the fact of a conveyance: "extrinsic writings in existence" at the time the partnership agreement was executed; "physical annexation" of other writings to the agreement (indeed, even the referenced Schedule A is missing); or "several writings" in addition to the agreement that "show expressly on their faces that they refer to the same transaction, and which the parties have mutually acknowledged by conduct or agreement as evidences of" the conveyance. *See* § 706.02(2)(a)-(c).

¶28 Turning to the provision in the agreement that limited partners do not have "the right to demand or receive property other than cash in return for [the limited partner's] contribution," this has no solving power on the conveyance issue because the partition ordered by the circuit court does not violate that provision. The partition ordered by the court is not "in return for" any partner's required contribution to the partnership. Instead, the partition is based on the ownership interests that the siblings have obtained as tenants in common. A contrary interpretation would again depend on the erroneous proposition that the partners, through the agreement, in fact conveyed their respective interests in the farmland to the partnership through the agreement.

---

A conveyance may satisfy any of the foregoing requirements of this section:

(a) By specific reference, in a writing signed as required, to extrinsic writings in existence when the conveyance is executed; or

(b) By physical annexation of several writings to one another, with the mutual consent of the parties; or

(c) By several writings which show expressly on their faces that they refer to the same transaction, and which the parties have mutually acknowledged by conduct or agreement as evidences of the transaction.

¶29     Because we conclude that the pertinent aspects of the partnership agreement are unambiguous on this point, we need not consider the extrinsic evidence that the partition opponents rely on in their brief in chief to the effect that they understood the partnership to own the farmland. *See MPI Wright*, 415 Wis. 2d 590, ¶39. They claim an understanding that is not supported by the unambiguous terms of the agreement.[6]

¶30     It does not help the partition opponents to cite the rule, found in WIS. STAT. § 706.001(3), that Chapter 706 "shall be liberally construed, in cases of conflict or ambiguity, so as to effectuate the intentions of the parties who have acted in good faith." It does not help because, to repeat, there is no ambiguity in the partnership agreement on the specific conveyance topic; assuming good faith at all times by everyone involved, the agreement does not express an intent to convey the farmland to the partnership. "'Not much would be left of the statute of frauds'" if an agreement that fails even to suggest an intent to convey property could be deemed to satisfy the statute of frauds based on extrinsic evidence. *See MPI Wright*, 415 Wis. 2d 590, ¶39 (quoting *Stuesser*, 19 Wis. 2d at 596) (alteration marks omitted).

¶31     The partition opponents contend that the goal stated in the recital of continuing the farming operation "would always have been tenuous and subject to frustration" unless the heirs conveyed their interests in the farmland to the partnership through the agreement. This amounts to an argument that, with the benefit of hindsight, the heirs to the estate should have taken a different approach to the farmland, different from what they actually expressed in the agreement.

---

[6] In their reply brief on appeal, the partition opponents encourage us to avoid relying on any theory involving a course of conduct by the parties to assist in interpretation of the partnership agreement. Our analysis is limited to interpretation of the unambiguous terms of the agreement.

Even in the contract context, courts generally do not balance equities in interpreting contracts or second guess the benefits and burdens of bargains unambiguously struck by the parties. *See Milwaukee Police Supervisors Org. v. City of Milwaukee*, 2023 WI 20, ¶24, 406 Wis. 2d 279, 986 N.W.2d 801.

¶32 The circuit court, in rendering its decision, referenced the lack of proof that there was a deed that conveyed the farmland to the partnership, and the partition opponents repeatedly cite that reference in critiquing the court's reasoning. Again, however, our review is de novo. As our discussion to this point should make clear, our application of WIS. STAT. § 706.02(1)(c) to the pertinent terms of the partnership agreement does not rely on the absence of proof of a deed.

## II. The breach of contract claim is not supported by the agreement

¶33 Our resolution of the partition opponents' alternative argument based on a breach of contract claim follows reasoning similar to what we have already stated in addressing their conveyance argument. One essential premise of the partition opponents' argument based on a contract claim is that the partnership agreement imposes a duty on the partners to contribute to the partnership each partner's individual interest in the farmland. Yet we have explained above, in concluding that the agreement does not convey the partners' interests in the farmland to the partnership, why we conclude that the agreement unambiguously does not include that duty. This completely defeats the potential for a breach of contract claim as their argument is framed by the partition opponents. *See* WIS JI—CIVIL 3053 ("A party to a contract breaches it when performance of a duty under the contract is due and the party fails to perform.").

¶34 In their reply brief on appeal, the partition opponents briefly assert that it "is not an issue on appeal" that the agreement unambiguously does not

include that duty, because the circuit court did not rely on this as a basis to grant summary judgment to the partition advocates on the breach of contract claim. It is true that, in addressing the argument that there was a breach of contract, the circuit court relied primarily on its determination that such a claim is barred under the statute of limitations that applies to contracts in Wisconsin, because much earlier breaches constituted accruals under the applicable statute of limitations. However, we do not rely on that rationale in affirming on this issue. *See State v. Trecroci*, 2001 WI App 126, ¶45, 246 Wis. 2d 261, 630 N.W.2d 555 (stating that we may affirm a circuit court decision based on different reasoning than that relied on by the circuit court). Further, the partition advocates specifically argue in their respondents' brief on appeal that "any failure to contribute interests in the farmland would breach the limited partnership agreement only if the Court concludes that the agreement required such a contribution," and that the agreement does not require such a contribution. The petition opponents had adequate opportunities to argue this point both in the circuit court and now on appeal.

¶35 On the merits of this issue, the partition opponents merely briefly repeat some of the same arguments that rest on their interpretation of the partnership agreement which we have already rejected in addressing the conveyance issue.

## CONCLUSION

¶36 For all of these reasons, we affirm the circuit court's order.

*By the Court*.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

14