Judith ANDERSON and Matthew B. Anderson,
Plaintiffs-Appellants,

v.

Jacqueline QUINN, John Doe Quinn, James
Proeschel, Brenda Proeschel, Audrey Worm, John
Doe Worm, Roger Ramseier, Catherine Ramseier,
Arnold Schmitt, Jane Doe Schmitt, Ross Fisher,
Karen Fisher, Bernard Tehany, Jane Doe Tehany,
Michael Persson, Deanna D. Persson, Edwin
Persson, Dorothy Persson, John Helling, Joan
Helling, Robert Hughes and Susan Hughes,
Defendants-Respondents.

Court of Appeals

*No. 2006AP2462. Oral argument October 29, 2007.
—Decided November 20, 2007.*

2007 WI App 260

(Also reported in 743 N.W.2d 492.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *J. Bushnell Nielsen* and *Bridget M. Hubing* of *Reinhart Boerner Van Deuren S.C.*, Waukesha. There was oral argument by *J. Bushnell Nielsen*.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Joe Thrasher* of *Thrasher, Doyle, Pelish & Franti, Ltd.*, Rice Lake. There was oral argument by *Joe Thrasher*.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. PETERSON, J. Judith and Matthew Anderson appeal a judgment enforcing three easements against their property. They argue the easements are unenforceable under the doctrine of merger of title. In

the alternative, they argue they are good faith pur-
chasers without notice of the easements, and two of
the easements are too indefinite to be enforceable
under the statute of frauds.

¶ 2. We conclude merger of title is not applicable
here, and the Andersons had notice of the easements.
However, one of the easements—the "beach
easement"—is too indefinite to satisfy the statute of
frauds. We therefore affirm the portion of the judgment
enforcing the other two easements, but reverse the
portion of the judgment enforcing the beach easement
and remand with directions to grant the Andersons
judgment with regard to that easement.

### BACKGROUND

¶ 3. In September 2002, the Andersons pur-
chased property on Lake Sissabagama in Sawyer
County. The property consists of a strip eighty-eighty
feet wide on the lake and running back from the lake
for a distance of roughly 170 feet where it meets a
larger parcel. A condominium development is located
on both sides of the strip—six units on one side and
four units on the other side.

¶ 4. Prior to 1984, the land on which the Ander-
sons' property and the condominium units are located
was owned as a single parcel and operated as a resort.
In 1984, the owners—Charles and Florence Super and
George and Patricia Pfeiffer—recorded a "DECLARATION
OF CONDOMINIUM OWNERSHIP OF BLACK MALLARD CONDOMINIUM."
The declaration created ten condominium units and
incorporated a plat map indicating the location of the
units and common areas. The declaration also in-
cluded a number of easements in favor of the unit
owners and the condominium association. The three
easements relevant here granted:

690

(1) A "non-exclusive right of ingress and egress over and through that certain road easement as set forth" in a legal description. The legal description of the road easement corresponds to the current driveway.

(2) The "non-exclusive right for the use of ... the entire beach area in front of the lodge building, not part of this condominium development, for the benefit of the unit Owners to pass and repass, sit upon, walk on and use as though it were part of the Condominium."

(3) A "non-exclusive easement for all water lines, electrical lines, and similar utilities, including septic, whether now in place or needed in the future for the efficient functioning of the condominium, accross [sic] Declarant's property between the two parcels of the condominium."

Pursuant to the easements, the unit owners have run water, sewer and electrical lines across the central parcel. The following diagram shows the land in question and some of its features:[1]

---

[1] No single survey map including all of the relevant land boundaries and features appears in the record. This diagram is compiled from various survey maps and other record sources, and is roughly to scale.

¶ 5. The condominium declaration was recorded and indexed under "Black Mallard Condominium." The plat map of the condominiums was recorded the same day. The declaration was not, however, indexed in the grantor index under "Super" or "Pfeiffer."[2] This meant that a person searching the register of deeds office for conveyances by the Supers or Pfeiffers would not find the Black Mallard declaration.

¶ 6. In 2002, the Andersons purchased their land from the Supers' and Pfeiffers' successor in title. The legal description of the land they purchased gave the outside dimensions of a larger parcel[3] and carved out an exception for "all that portion known as Black Mallard Condominium Plat . . . ." It did not contain any reference to easements in favor of Black Mallard beyond that statement.

¶ 7. When the Andersons purchased the property in September 2002, they were advised by their broker and title insurer that there were no easements of record and they would be able to shut down the driveway across their parcel and build a cabin there. In May or June 2003, however, on one of the Andersons' first visits to the property, the secretary of the condominium association stopped by the Anderson land. The secretary told Judith Anderson about the easements and gave her a copy of the declaration.

[2] The grantor index is arranged alphabetically by the name of the grantor. So, a person searching for conveyances by Super and Pfeiffer would look under "S" for Super and "P" for Pfeiffer but not under "B." *See* BLACK'S LAW DICTIONARY 786 (8th ed. 2004).

[3] The legal description in the Anderson deed has three parts. The first gives the outside boundaries of a larger parcel that includes the Black Mallard Condominium. The second part excepts the Black Mallard plat. It is unclear what the third part refers to, but the parties agreed at oral argument that it is not relevant here.

¶ 8. The Andersons filed this suit in March 2005. They named the Black Mallard unit owners as defendants, and requested an order voiding the easements in the declaration and a permanent injunction against the unit owners prohibiting exercise of any of their rights under the declaration.[4]

¶ 9. Both parties moved for summary judgment. The court denied both motions and set the matter for trial. A bench trial took place in April 2006. The court, in a written decision, made a number of fact findings and concluded the easements were valid and enforceable against the Andersons. The court entered judgment to that effect in August 2006.

### DISCUSSION

¶ 10. The Andersons do not dispute any of the circuit court's fact findings. Instead, they argue the court misapplied the common law doctrine of merger of title and WIS. STAT. §§ 706.02 and 706.09.[5] The application of a legal standard to undisputed facts is a question of law reviewed without deference to the circuit court. *Kenyon v. Kenyon,* 2004 WI 147, ¶ 11, 277 Wis. 2d 47, 690 N.W.2d 251.

### I. Merger of title

¶ 11. The Andersons first argue the easements are void under the doctrine of merger of title. The

---

[4] The Andersons later limited their driveway easement challenge to the part of the driveway connecting the two parcels, and stipulated they did not intend to landlock the unit owners in the south parcel.

[5] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

doctrine of merger of title is based on the property law concept that "no man can, technically, be said to have an easement in his own land. And the consequence is, that if the same person becomes owner in fee simple of both estates, the easement is extinguished." *Mabie v. Matteson*, 17 Wis. 1, 9–10 (1863) (citation omitted). The concept is described more concretely as follows:

> [I]f X owns parcel 1, the dominant tenement, but not parcel 2, the servient tenement, and later purchases parcel 2, the easement will be extinguished .... If X later sells parcel 1, the purchaser takes the property without the right to traverse parcel 2, unless X also grants to the purchaser an easement.

*Kallas v. B&G Realty*, 169 Wis. 2d 412, 420, 485 N.W.2d 278 (Ct. App. 1992).

¶ 12. When the Supers and Pfeiffers recorded the Black Mallard declaration, which included the easements, they owned the servient parcel—the parcel now owned by the Andersons. They also owned the dominant parcel—the land made subject to the condominium. The Andersons argue the easement therefore merged back into the Supers' and Pfeiffers' fee simple title immediately after it was created.

¶ 13. The unit owners contend the declaration simply defined relationships between parcels that would be sold in the future. Therefore, no easement came into being until the units were sold. When the units were sold, the servient and dominant parcels were not owned by the same person.

¶ 14. We agree with the unit owners. The unit owners' argument is consistent with Wis. Stat. ch. 703, which governs condominium ownership. Under Wis. Stat. § 703.07(1), a condominium is created by record-

ing a declaration and a plat. Among other things, the declaration must describe the land, indicate the "owner's intent to subject the property to the condominium declaration," and describe the individual units and common areas. WIS. STAT. § 703.09(1)(b)-(d). The declaration must be signed by the owner of the property and the first mortgagee, if any, on it. WIS. STAT. § 703.09(1c). When units are sold, the documents recording the sale need only include "the letter or number . . . on the condominium plat together with a reference to the condominium instruments . . . ." WIS. STAT. § 703.12.

¶ 15. These sections anticipate a two-step process. First, the declaration and plat are filed. The declaration and plat define the rights and obligations of future purchasers of units in the condominium. That action is taken unilaterally by the owner of the property. Next, the units themselves are actually sold. Because the master plan—the declaration and plat—is already in place, the units are described simply by reference to the master plan.

■

¶ 16. Against this backdrop, the Andersons' argument makes little sense. First, creation of a condominium is, by statute, a unilateral act by the owner in anticipation of a future sale. *See* WIS. STAT. § 703.09(1c). It does not involve any transfer of rights to a third party. As a practical matter, then, the declaration does not create any new rights that can immediately merge back into the fee; rather, it is a document defining rights to be sold in the future. *See Kallas,* 169 Wis. 2d at 420.[6]

---

[6] The parties disagree whether the declaration is a "conveyance" for purposes of WIS. STAT. § 706.01(4). We do not express any opinion on this question. Regardless whether the declaration is a conveyance, the key point for purposes of merger of

¶ 17. More fundamentally, however, the Andersons' argument is not consistent with the statutory structure governing condominium ownership. If the Andersons are correct, all rights set out in condominium declarations are extinguished the moment the declaration is filed. This would be true even though the declarations were created following the process found in Wis. Stat. §§ 703.07–703.09, and would extinguish all property rights created in the declaration, not just easements. The Andersons do not suggest any way to reconcile their position with §§ 703.07–703.09, and we see none.

## II. Notice

¶ 18. The Andersons next argue they are good faith purchasers without notice of the easements, and their interest is superior to those belonging to the unit owners. They rely on Wis. Stat. § 706.09(1):

> A purchaser for a valuable consideration, without notice as defined in sub. (2) . . . shall take and hold the estate or interest purported to be conveyed to such purchaser free of any claim adverse to or inconsistent with such estate or interest, if such adverse claim is dependent for its validity or priority upon:
>
> . . . .
>
> (b) . . . Any conveyance, transaction or event not appearing of record in the chain of title to the real estate affected, unless such conveyance, transaction or event is identified by definite reference in an instrument of record in such chain.

Under this statute, then, the Andersons' interest is superior to that of the unit owners if: (1) the Ander-

---

title is that filing a declaration is by definition a unilateral act, not a transfer of rights from one party to another.

696

sons were without notice of the easements, and (2) the declaration is not identified by definite reference in the Andersons' chain of title.

¶ 19. We conclude the Andersons had notice of the declaration through the unit owners' use of the property, and their interest is therefore not superior to that of the unit owners.[7]

¶ 20. Notice here is governed by WIS. STAT. § 706.09(2):

> A purchaser has notice of a prior outstanding claim or interest, within the meaning of this section wherever, at the time such purchaser's interest arises in law or equity:
>
> . . . .
>
> (a) . . . Such purchaser has affirmative notice apart from the record of the existence of such prior outstanding claim, including notice, actual or constructive, arising from use or occupancy of the real estate by any person at the time such purchaser's interest therein arises, whether or not such use or occupancy is exclusive; but no constructive notice shall be deemed to arise from use or occupancy unless due and diligent inquiry of persons using or occupying such real estate would, under the circumstances, reasonably have disclosed such prior outstanding interest; nor unless such use or occupancy is actual, visible, open and notorious . . . .

---

[7] Our conclusion that the Andersons had notice of the easements makes it unnecessary to decide whether the declaration is identified by definite reference in the Andersons' chain of title. *See Patrick Fur Farm, Inc. v. United Vaccines, Inc.*, 2005 WI App 190, ¶ 8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707 (court of appeals decides cases on the narrowest possible grounds).

¶ 21. Under this statute, actual or constructive notice of a claim can arise from use (1) "by any person" (2) "at the time ... the purchaser's ... interest arises," (3) "whether or not [the] use ... is exclusive ...." Wis. Stat. § 706.09(2). In addition, constructive notice of a claim can exist only if: (1) diligent inquiry of persons using the land would have revealed the claimed interest, and (2) the use is "actual, visible, open and notorious ...." *Id.*

¶ 22. The circuit court held the Andersons had notice under this section. The court found, based in part on a judicial view of the property, that the driveway was "open, notorious, and overtly visible" to the Andersons, and the Andersons "should have realized that the unit owners were also using" the driveway. The court further found that if the Andersons had asked the unit owners about the use, the Andersons "would have certainly received information of a prior outstanding interest." This final finding was apparently based on testimony by Judith Anderson that soon after she purchased the property, the secretary of the condominium association gave her a copy of the easements, unsolicited.

¶ 23. We agree with the circuit court's analysis. The Andersons do not dispute the court's finding that the driveway was actual, visible, open and notorious. They similarly do not attack the court's finding that they would have learned of the easements had they inquired of the unit owners. Finally, they do not argue the unit owners were not using the driveway at the time they purchased the property.[8] Those facts establish constructive notice under Wis. Stat. § 706.09(2)(a).

---

[8] The Andersons argue the driveway never gave them notice of any claim because they used it as well. However, notice from use exists "whether or not such use ... is exclusive ...." Wis. Stat. § 706.09(2)(a).

¶ 24. The Andersons argue this result is contrary to case law, specifically *Taggart v. Warner*, 83 Wis. 1, 53 N.W. 33 (1892). In that case, Taggart had crossed another person's land to get to Taggart's property. *Id.* at 2–3. Warner purchased the other person's land and excluded Taggart. The court concluded Taggart's wagon track, without more, did not give rise to a prescriptive easement, and furthermore:

> [T]he mere existence of a track from [Taggart's parcel] across [Warner's parcel] to the public highway gave [Taggart] no legal or equitable right to such continued free passage, much less can it be regarded as notice to Warner, as such purchaser, of any such outstanding right.

*Id.* at 4–5. The Andersons argue that if the wagon track in *Taggart* was not sufficient notice to establish a claim, neither is the driveway here.

¶ 25. The problem with the Andersons argument is that the holding in *Taggart* is based on Ann. Stats. of Wis. § 2241 (Sanborn and Barryman 1889):

> Every conveyance of real estate . . . not . . . recorded as provided by law, shall be void, as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate, or any portion thereof, whose conveyance shall be first duly recorded.[9]

This statute mirrors current Wis. Stat. § 706.08(1)(a), which provides in relevant part:

---

[9] Both the 1898 official compilation and the 1889 unofficial compilation contain this language. *See* Wis. Stat. § 2241 (1898); Ann. Stats. of Wis. § 2241 (Sanborn and Barryman 1889). The version of *Taggart* found in the Northwest Reporter contains a footnote, apparently by the editor, that also has this language. *Taggart v. Warner*, 53 N.W. 33, 34 n.1 (Wis. 1892).

> [E]very conveyance that is not recorded as provided by law shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real estate or any portion of the same real estate whose conveyance is recorded first.

The difference between the two, however, is that "good faith" for purposes of § 706.08(1)(a) exists only where there is no notice under Wis. Stat. § 706.09. *Associates Fin. Servs. Co. v. Brown,* 2002 WI App 300, ¶¶ 11–14, 258 Wis. 2d 915, 656 N.W.2d 56; *see also Kordecki v. Rizzo,* 106 Wis. 2d 713, 719 n.5, 317 N.W.2d 479 (1982).

¶ 26. No statute similar to Wis. Stat. § 706.09 existed in 1892 when *Taggart* was decided.[10] The court in *Taggart* therefore did not have the benefit of the specific rules in § 706.09(2) governing notice and the purchaser's duty to ask any user of the property what rights the user might have. Instead, the *Taggart* court reached its own conclusions about what good faith meant, and concluded Warner acted in good faith because he asked the seller about the wagon track and was assured that Taggart did not have a right to use it. *Taggart,* 83 Wis. at 4–5. While the Andersons might be considered good faith purchasers under the *Taggart* court's interpretation of former Wis. Stat. § 2241, they are not without notice under Wis. Stat. § 706.09(2).

¶ 27. Finally, at oral argument the Andersons contended that Wis. Stat. § 706.09(2)(a) applies only to

---

[10] Wisconsin Stat. § 706.09 was created in 1967 as Wis. Stat. § 235.491. 1967 Wis. Laws, ch. 274. It was renumbered § 706.09 shortly thereafter. 1969 Wis. Laws, ch. 235, § 11. None of the statutes surrounding Wis. Stat. § 2241 in effect in 1892 govern notice or good faith. *See generally* Wis. Stat. §§ 2203–2259 (1898); Ann. Stats. of Wis. §§ 2203–2259 (Sanborn and Barryman 1889).

prescriptive rights, and not to rights found in an improperly recorded or indexed document. However, nothing in § 706.09 makes this distinction. The statute simply provides that a purchaser "without notice as defined in sub. (2)" takes free of certain listed claims. WIS. STAT. § 706.09(1). One of those listed claims is any "conveyance, transaction or event not appearing of record in the chain of title . . . ." WIS. STAT. § 706.09(1)(b). This language lumps prescriptive easements and improperly recorded easements together, giving them exactly the same treatment. Similarly, the notice requirements in § 706.09(2) explain when use or occupancy gives a buyer a duty to inquire about rights held by others. Nothing in that section distinguishes between prescriptive rights and improperly recorded rights.

¶ 28. The Andersons argue their proffered distinction is supported by case law and legislative history. However, we are not at liberty to disregard the plain language of a statute when interpreting it. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). The Andersons do not argue WIS. STAT. § 706.09 is ambiguous or attempt to reconcile their position with its text. In addition, we note that we have previously applied § 706.09(2)(a) in a case involving an unrecorded lease. *Hoey Outdoor Advert., Inc. v. Ricci*, 2002 WI App 231, ¶¶ 3, 14, 256 Wis. 2d 347, 653 N.W.2d 763. In *Ricci*, we held that the presence of a billboard was an open and obvious notice of a claim under § 706.09(2)(a). *Ricci* belies the Andersons' claim that § 706.09(2)(a) applies only in the prescriptive easement context.[11]

---

[11] A number of cases, including *Ricci*, repeat boilerplate language stating that the purchaser must, among other things,

## III. The statute of frauds

¶ 29. The Andersons finally argue the utility and beach easements are too indefinite to satisfy the statute of frauds. The statute of frauds provides that a transaction governed by WIS. STAT. ch. 706 "shall not be valid unless evidenced by a conveyance that . . . [i]dentifies the land . . . ." WIS. STAT. § 706.02(1)(b); *see also* WIS. STAT. § 706.001(1). Courts have interpreted this requirement to mean the conveyance must identify the property with "reasonable certainty." *Wiegand v. Gissal*, 28 Wis. 2d 488, 492, 137 N.W.2d 412 (1965).[12]

¶ 30. "Reasonable certainty" means that "by the aid of the facts and circumstances surrounding the parties at the time the court can with reasonable

consult "the land itself, to discover by observation the rights that arise outside the recording system *by virtue of possession or use." See, e.g., Hoey Outdoor Advert., Inc. v. Ricci*, 2002 WI App 231, ¶ 19, 256 Wis. 2d 347, 653 N.W.2d 763; *Kordecki v. Rizzo*, 106 Wis. 2d 713, 719 n.5, 317 N.W.2d 479 (1982) (emphasis added). There is nothing inaccurate about this language—a purchaser must indeed consult the land to discover potential prescriptive rights. However, as noted above, WIS. STAT. § 706.09 requires the purchaser to consult the land to discover potential *unrecorded* rights as well.

[12] The unit owners argue the declaration is not a conveyance, but concede that "common sense" indicates the descriptions in the declaration must be definite. We suggest the reason is that even if the declaration itself is not a conveyance, the deeds conveying each unit are. Because those deeds incorporate the description in the declaration, *see* WIS. STAT. § 703.12, the deeds will run afoul of the statute of frauds unless the description in the declaration is sufficiently definite. In any event, the unit owners concede the definiteness requirements of the statute of frauds apply to the easements.

certainty determine the land which is to be conveyed . . . ." *Kuester v. Rowlands*, 250 Wis. 277, 279, 26 N.W.2d 639 (1947) (citations omitted). It does not, however, necessarily require a legal description. In *Kuester*, the conveyance described the property as "my property . . . particularly described as part of sec. 13, Town of Genesee, county of Waukesha." *Id.* at 278, 280. The court held that the description was sufficiently definite because it included all of the owner's property in that particular township.

■

¶ 31. In this case, the land burdened by the utility easement can be determined with "reasonable certainty" with reference to the "facts and circumstances surrounding the parties" when the easement was created. *See id.* at 279. The utility easement grants the unit owners the right to run utilities "accross [sic] Declarant's property between the two parcels of the condominium." From looking at the plat, the only reasonable meaning of the phrase "property between the two parcels of the condominium" is the central parcel—the land in front of the lodge from the driveway to the beach. The plat shows an overhead power line running through that parcel. In addition, the utility easement was created in order to allow common utilities for all of the condominiums. Because of the location of the condominium units, utility lines connecting the units would necessarily run through the central parcel.[13]

---

[13] While one could conceivably create a larger parcel "between the two parcels of the condominium" by drawing a line between the farthest corners of the parcels, this interpretation is unreasonable. It would give the unit owners the right to run utilities through part of the lodge building. The extra land is also not where utilities connecting the units would be located.

¶ 32. The Andersons argue a description of land that is not a legal description is always indefinite when it describes part of a larger parcel. They rely on two cases where conveyances were held to be indefinite because they described buildings or land features but did not describe the surrounding land. *See, e.g., Wiegand*, 28 Wis. 2d at 492; *Stuesser v. Ebel*, 19 Wis. 2d 591, 595, 120 N.W.2d 679 (1963). However, while these cases illustrate the difficulty of definitely describing part of a larger parcel without a legal description, they do not hold that a legal description is required. Instead, they simply hold that a description of buildings, without more, is not adequate to determine a parcel's boundaries with reasonable certainty. *Wiegand*, 28 Wis. 2d at 492; *Stuesser*, 19 Wis. 2d at 595. Here, as explained above, the phrase "between the two parcels of the condominium" describes the burdened parcel with reasonable certainty. The fact that it describes part of a larger parcel is not controlling.

¶ 33. However, the beach easement does suffer from the same flaw as the property description in *Wiegand*. The beach easement describes the burdened land as "the entire beach area in front of the lodge building." At oral argument, the unit owners conceded this language could refer to the area immediately adjacent to the water or to all of the land between the lake and the lodge. In other words, this description gives a beginning point for the burdened parcel—the water—but no clear ending point. As such, it is akin to the description in *Wiegand* of only buildings and land features with "no way of knowing the extent of the land areas surrounding them." *See Wiegand*, 28 Wis. 2d at 493. The beach easement therefore is not definite

enough to satisfy the statute of frauds.[14] On remand, the court shall grant judgment to the Andersons with regard to the beach easement.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions. No costs.

---

[14] At oral argument, the unit owners argued the beach easement was based on a mutual mistake of fact, and therefore is enforceable in equity under WIS. STAT. § 706.04. However, this argument was raised for the first time during oral argument. The unit owners did not argue they were entitled to equitable relief at the circuit court, nor did they brief the issue on appeal. The issue is therefore waived, and we decline to address it. *See Jackson v. Benson*, 218 Wis. 2d 835, 901, 578 N.W.2d 602 (1998).