COURT OF APPEALS
DECISION
DATED AND FILED

June 23, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP151**

Cir. Ct. No. **2022CV129**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

LAURALYNN PIGHETTI, TRUSTEE OF THE LAURALYNN ANN PIGHETTI LIVING AND ROBERT EUGENE PIGHETTI LIVING TRUST DATED 2/22/2017,

PLAINTIFF-RESPONDENT,

V.

ESTATE OF DALE N. SCHMECHEL AND BARBARA L. SCHMECHEL,

DEFENDANTS-APPELLANTS.

---

APPEAL from an order of the circuit court for Oconto County: JAY N. CONLEY, Judge. *Affirmed.*

Before Stark, P.J., Hruz, and Gill, JJ.

¶1 STARK, P.J. This case presents a dispute between neighboring landowners concerning the existence, location, and scope of an easement that appeared in the dominant estate's chain of title but not in the servient estate's chain of title. The Estate of Dale N. Schmechel and Barbara L. Schmechel (the

Schmechels) appeal from a circuit court order concluding, on partial summary judgment and after a trial to the court, that the Lauralynn Ann Pighetti Living and Robert Eugene Pighetti Living Trust dated 2/22/2017 (the Trust) has an express easement over a portion of the Schmechels' property and that the Schmechels cannot take their property free of the easement because they had affirmative notice of the easement pursuant to WIS. STAT. § 706.09(2)(a) (2023-24).[1] The court also adopted the location and scope of the easement as determined by a surveyor hired by the Trust. Alternatively, the court concluded that the Trust had established a prescriptive easement through decades of open, notorious, and adverse use, pursuant to WIS. STAT. § 893.28.

¶2 The Schmechels contend that the circuit court erred by finding an express easement on their property because the easement was not referenced in their property's chain of title, a gate and a sign were insufficient to provide notice of the easement to the Schmechels under WIS. STAT. § 706.09(2)(a), and the Trust failed to meet its burden to demonstrate the location and scope of the easement and whether the easement was intended for vehicular use.

¶3 We affirm the conclusions of the circuit court with regard to the existence of an express easement, the fact that the Schmechels had notice of the easement, and the easement's location and scope. The Trust has an express easement over the Schmechels' property, and despite the easement not appearing in the Schmechels' chain of title, the Schmechels had affirmative notice of the Trust's easement by operation of WIS. STAT. § 706.09(2)(a). Therefore, they cannot avoid the Trust's adverse claim.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

## BACKGROUND

¶4 In 2006, Lauralynn Pighetti and her late husband, Robert Pighetti,[2] purchased two adjoining parcels of real property on Peninsula Lane in Oconto County from Allen Prill and his wife, which the Pighettis later conveyed by quit claim deed to the Trust (the Trust property). The warranty deed conveying the Trust property contained explicit references to an easement across an adjacent property: "The above property having an Easement from Town Highway on an old logging road, known as Camp 2 Road, to that part of said description laying South of McCaslin Brook, to all heirs and assigns" and "a permanent 20 foot wide access from private Town Road to the above described land on the location of present Old Railroad Grade and reserving unto Ella Popp the right to walk over the said described land on said Old Railroad Grade."

¶5 Based on the evidence in the record, these references to an easement have appeared consistently in the Trust property's chain of title since 1977, and the prior and current property owners—Prill and the Pighettis, individually and as trustees, respectively—have used the easement. Prill testified during his deposition and averred in an affidavit that when he owned the Trust property, from 1991 to 2006, he used the easement "all the time," and he "kept a camping trailer on the property just [s]outh of McCaslin Brook from April to November each year and used the easement … regularly." Lauralynn testified that when she and her husband purchased the Trust property, there were no buildings on the property, and they "would use the [property to] camp." She explained that they would have

---

[2] For ease of reading, we will refer to Lauralynn and Robert collectively as the Pighettis, and, where appropriate, we will refer to Lauralynn by her first name.

to go "over the easement, over [their] first piece of property and then onto the second" to camp "at the far side of the[ir] property," and they used the easement "at least several times during the summer months." The map reproduced below was created by Harry Smith, a surveyor with Northeast Surveying, Inc., who was hired by the Trust, and shows the approximate location of the easement.



¶6 There was also physical evidence of the easement on the land. According to Prill's testimony and photographs in the record, there was a metal gate blocking traffic "to keep people from driving [onto the easement] … off the main road"—Peninsula Lane—over the Schmechel property because "[i]t was a boy scout camp entrance before." Prill averred that when he first purchased the property, the entrance to the easement from Peninsula Lane was blocked with "a cable with a lock," but "[a]t some point" in the early 1990s, he "was approached by Oconto County and told that, because a snowmobile operator had nearly been

decapitated by running into a cable, they wanted [him] to install a gate," which he did. He also installed a metal "No Trespassing" sign on the gate, and he carved his name into the sign with a knife. The gate, locked with a padlock, and the sign remained until the events that led to this case. Photographs of the gate and sign are reproduced below.

 

¶7 According to Prill, the easement was essential to his property given that "the only way to access" one of the parcels "was on the easement" because there "is a steep hill" with hemlock trees on it that one cannot drive up. Prill's testimony was further supported by the surveyor's affidavit. Smith noted in his affidavit that, based on his observations, "[t]he path from Peninsula Lane to the gate was obvious"; that "topography in the area was very steep, [so] there was a limited flat area between the gate and an opening in the woods on the [Trust] property that had clearly been used as a roadway"; and that "tire marks on the earth … directly in line with the gate on Peninsula Lane … made it easy to delineate the centerline of the easement."

¶8      In 2019, Barbara L. Schmechel and her late husband, Dale N. Schmechel,[3] purchased real property, which bordered the Trust property and on which the easement was located, from Robert and Ruth Popp (the Popps) via a trustee's deed (the Schmechel property).[4]   The Schmechels obtained a title commitment in connection with the purchase of the property, but neither the trustee's deed nor the title commitment contained a reference to an easement in favor of a third party.  The Popps also executed an affidavit stating that there were no unrecorded easements on the Schmechel property.  However, Barbara testified that she was aware that the Popps had given a few neighbors a key to the gate blocking access to the easement.  Despite this fact, Barbara averred that she "first learned" of the easement during a conversation with Lauralynn in July 2021.[5]

¶9      Eventually, the Trust filed this lawsuit, seeking declaratory and injunctive relief as to its easement rights across the Schmechel property and alleging trespass.  The allegations in the complaint were that the Schmechels took actions that interfered with the Trust's easement rights by blocking access to the

---

[3]  Where appropriate, we will also refer to Barbara by her first name.

[4] Before the Schmechels purchased their property in 2019, the Schmechels purchased another parcel of property directly northwest of it in 2011.  Thus, according to the record, the Schmechels "became familiar with the Schmechel Property and friendly with the previous owners."

The Trust property and the Schmechel property were both once owned by common owners, Charlie and Ella Popp, who purchased all the land in 1945.  According to Marilyn Roberto, who is the niece of Charlie and the daughter of Robert and Ruth and who testified at the trial, Charlie installed a chain across what had been a point of entrance to a boy scout camp after he sold property to the Boy Scouts of America.  This was the same location of the later-installed gate.

[5]  In August 2022, the Schmechels ordered a "dummy" commitment for title insurance on the Schmechel Property "to determine whether or not another title company could find the Purported Easement on the Schmechel Property chain of title that the initial title search missed." That "dummy" title commitment also failed to reveal the existence of the easement.

easement,[6] "driving piles in the easement," "having contractors stack boulders in front of the easement," "chang[ing] the grade and landscaping in the area preventing [the Pighettis] from accessing the easement," "calling the Oconto County Sheriff[']s Department every time [the Pighettis] use[d] the easement," and "sending harassing texts" and "generally harassing" the Pighettis.

¶10     The Schmechels filed an answer and counterclaims, also seeking a declaration of interest and alleging trespass, injury to real property, and slander of title. The Trust later filed a motion for partial summary judgment, arguing that it had an express easement over the Schmechel property, which was explicit in the deed to the Trust property.

¶11     After extensive briefing by the parties and a nonevidentiary hearing, the circuit court, in a written decision, granted in part the Trust's motion for summary judgment. The court found "that [the Trust has] an express easement on [the Schmechel] property. The easement appears in [the Trust's] chain of title since at least 1977. There is no dispute about this." The court also found that the Schmechels had notice of the easement, under WIS. STAT. § 706.09(2), because the deed to their property was "without warranty" and because there "was a locked gate on the easement with a 'No Trespassing' sign and the name 'Allen Prill' carved with a knife on the sign." According to the court, "[t]his was glaring, 'in your face' notice to [the Schmechels] to investigate." The court also found,

---

[6] Barbara admitted that her husband had changed the lock on the gate without providing the Pighettis with a key.

however, that there was a factual dispute as to the description and scope of the easement, and it denied summary judgment on that issue.[7]

¶12 Following the circuit court's partial summary judgment ruling, it held a bench trial to resolve the remaining issues. Lauralynn, Barbara, and Marilyn Roberto testified. The parties also agreed that the court could read and rely upon Prill's deposition testimony and upon Smith's affidavit.

¶13 Following the bench trial, the circuit court entered a written decision and order, which reaffirmed its prior ruling that the Trust had an express easement on the Schmechel property and, as relevant to this appeal, determined that the "description and the scope of the easement" were consistent with "the Affidavit of Harry Smith."[8] The court also dismissed the Schmechels' remaining counterclaims. The court specifically found that the Schmechels' "star witness," Roberto, "was knowledgeable about the history of the area," but "her testimony was confusing at times." Thus, the court appeared to deem Prill's deposition testimony to be more credible than Roberto's and Barbara's testimony. The court also awarded fees and costs to the Trust, but it declined to award compensatory or punitive damages. The Schmechels appeal.

---

[7] As a result of its decision, the circuit court also dismissed the Schmechels' counterclaim alleging slander of title.

The Schmechels then petitioned this court for an interlocutory appeal of the circuit court's summary judgment decision, which we denied.

[8] The circuit court also found that the Trust had established prescriptive rights to the easement based on use for over 20 years. Because we affirm the court's decision with regard to the existence of an express easement, we do not address the Schmechels' argument that the court erred by finding that the Trust had established a prescriptive easement. *See State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) ("An appellate court should decide cases on the narrowest possible grounds.").

## DISCUSSION

¶14 This case requires us to venture into an uncommon area of real estate and title law involving hidden easements. "An easement 'is a permanent interest in another's land, with a right to enjoy it fully and without obstruction.'" *Konneker v. Romano*, 2010 WI 65, ¶25, 326 Wis. 2d 268, 785 N.W.2d 432 (citation omitted). The dominant estate—here, the Trust property—"enjoys the privileges granted by the easement," and the servient estate—here, the Schmechel property—"permits the exercise of those privileges." *See id.* Here, the easement is hidden because it is only recorded in the dominant estate's chain of title and is missing from the servient estate's chain of title. While there are several types of easements, this case involves an express easement. *See AKG Real Est., LLC v. Kosterman*, 2006 WI 106, ¶15 & n.4, 296 Wis. 2d 1, 717 N.W.2d 835. The existence and interpretation of an express easement are questions of law that we review de novo. *See Konneker*, 326 Wis. 2d 268, ¶23; *AKG Real Est., LLC*, 296 Wis. 2d 1, ¶14; *see also Bohm v. Leiber*, 2020 WI App 52, ¶15, 393 Wis. 2d 757, 948 N.W.2d 370 ("The meaning and scope of an easement is a question of law we review de novo.").

¶15 Relevant here, "[w]hether the circuit court properly granted summary judgment is [also] a question of law that this court reviews de novo," applying the same methodology as the circuit court. *See Hocking v. City of Dodgeville*, 2009 WI 70, ¶7, 318 Wis. 2d 681, 768 N.W.2d 552 (citation omitted). In contrast, our review of the circuit court's decision following a bench trial is highly deferential to the court's findings of fact. *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶11, 290 Wis. 2d 264, 714 N.W.2d 530. We "will not reverse unless the finding is clearly erroneous." *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643, 340 N.W.2d 575 (Ct. App. 1983) (citing WIS. STAT.

§ 805.17(2)).  "Under the clearly erroneous standard, 'even though the evidence would permit a contrary finding, findings of fact will be affirmed on appeal as long as the evidence would permit a reasonable person to make the same finding.'"  ***Royster-Clark, Inc.***, 290 Wis. 2d 264, ¶12 (citation omitted).  We also search the record for evidence supporting the court's decision.  ***Id.***

¶16     On appeal, the Schmechels present two issues for our review.  First, the Schmechels argue that the circuit court erred by concluding that the Trust holds an express easement over the Schmechel property because the easement was not recorded in their chain of title and they did not otherwise have notice of the Trust's claimed easement.  *See* WIS. STAT. § 706.09(1).  Second, they assert that the circuit court erred when it determined the location and scope of the express easement.  For the reasons that follow, we reject the Schmechels' arguments and affirm the circuit court's decision.

## I.  Express easement

¶17     As noted, the circuit court, on summary judgment, determined that the Trust has an express easement over the Schmechel property.  The Schmechels argue that the court erred because the easement is only recorded in the dominant estate's chain of title, and, pursuant to WIS. STAT. § 706.09(1), they are good faith purchasers of their property without notice of the easement.  As a general matter, § 706.09 "operates as a 'title curative' statute that corrects defects in titles to real estate."  ***Turner v. Taylor***, 2003 WI App 256, ¶8, 268 Wis. 2d 628, 673 N.W.2d 716 (citation omitted).  Section 706.09(1) provides, in pertinent part, that "[a] purchaser for a valuable consideration, without notice as defined in sub. (2) … shall take and hold the estate or interest purported to be conveyed to

such purchaser free of any claim adverse to or inconsistent with such estate or interest."

¶18     As outlined in *Turner*, 268 Wis. 2d 628, ¶8, a purchaser takes title to real property free and clear of adverse claims provided (1) "the estate or interest [is] purchased for valuable consideration, i.e., the purchaser must be bona fide," WIS. STAT. § 706.09(1); (2) "the adverse claim or interest must fall into one of the eleven listed situations" in § 706.09(1)(a)-(k); (3) "the adverse claim or interest must not be exempt from the statute," § 706.09(3); and (4) "the purchaser must not have had affirmative or express notice of the adverse claim or interest at the time the purchaser's interest developed in law or equity," § 706.09(1), (2).  Applicable to the Schmechels' claim here is the listed situation in § 706.09(1)(k)—"[a]ny interest of which no affirmative and express notice appears of record within 30 years"—which includes easements.  *See Turner*, 268 Wis. 2d 628, ¶12.

¶19     However, as noted above, and as central to this case, this defense is not available to purchasers of real property who have notice of the adverse claim at the time of the purchase.  *See id.*, ¶8.  WISCONSIN STAT. § 706.09(2) recognizes two forms of notice that prevent a purchaser from taking property free of prior interests: "[a]ffirmative notice" and "[n]otice of record."[9]  Sec. 706.09(2)(a)-(b). Under § 706.09(2)(a), affirmative notice exists when a purchaser

---

[9]  Notice of record occurs when

> [t]here appears of record in the chain of title of the real estate affected, within 30 years and prior to the time at which the interest of such purchaser arises in law or equity, an instrument affording affirmative and express notice of such prior outstanding interest conforming to the requirements of definiteness of [WIS. STAT. § 706.09](1)(b).

(continued)

11

has affirmative notice apart from the record of the existence of such prior outstanding claim, including notice, actual or constructive, arising from use or occupancy of the real estate by any person at the time such purchaser's interest therein arises, whether or not such use or occupancy is exclusive; but no constructive notice shall be deemed to arise from use or occupancy unless due and diligent inquiry of persons using or occupying such real estate would, under the circumstances, reasonably have disclosed such prior outstanding interest; nor unless such use or occupancy is actual, visible, open and notorious.

See also *Anderson v. Quinn*, 2007 WI App 260, ¶21, 306 Wis. 2d 686, 743 N.W.2d 492.

¶20 We have also explained that

[a] purchaser of land has three sources of information that the purchaser should consult to learn of rights to the land: (1) the records in the office of the register of deeds where the basic rights involved are recorded; (2) other public records to discover rights that usually are not recorded in the office of the register of deeds, i.e., judgments and liens; and (3) the land itself, to discover by observation the rights that arise outside the recording system by virtue of possession or use.

*Hoey Outdoor Advert., Inc. v. Ricci*, 2002 WI App 231, ¶19, 256 Wis. 2d 347, 653 N.W.2d 763; *see also* *Kordecki v. Rizzo*, 106 Wis. 2d 713, 719-21 & n.5, 317 N.W.2d 479 (1982) (explaining that a purchaser is deemed to have constructive notice of "the record and to have notice of the contents of all instruments in the chain of title and of the contents of instruments referred to in an instrument in the chain of title"); *3 Rivers Advert., Inc. v. Augelli*, No. 2010AP2295, unpublished slip op., ¶32 (WI App July 12, 2012) ("Under Wisconsin law, a purchaser is under

---

Sec. 706.09(2)(b). Although the Schmechels appears to argue, at least in their reply brief, that notice of record may apply under the facts of this case, we conclude that the circuit court correctly found that the Schmechels had affirmative notice of the easement under § 706.09(2)(a). We therefore need not determine whether the easement contained in the Trust's chain of title constituted notice of record, and we do not address this form of notice further.

an obligation to seek out information regarding potential encumbrances on the real property of which he or she is seeking to obtain ownership.");[10] WIS. STAT. § 706.09(4) (defining "chain of title" to include "instruments, actions and proceedings discoverable by reasonable search of the public records and indexes affecting real estate in the offices of the register of deeds and in probate and of clerks of courts of the counties in which the real estate is located"). In summary, and said plainly, even if a neighbor's claim is not in your property's chain of title, you are legally responsible for knowing about the adverse claim if the neighbor is actively using or living on the land, provided that the use is actual, visible, open, and notorious and provided that a reasonable person would have discovered the claim had he or she taken reasonable and diligent action to inquire about it.

¶21     Here, the circuit court determined that the Schmechels had affirmative notice of the Trust's easement over their property within the meaning of WIS. STAT. § 706.09(2)(a). Although the court found that "[t]here is no dispute" that the easement appeared in the Trust's "chain of title since at least 1977," it also found that "[t]he easement does *not* appear in title commitments obtained by" the Schmechels. (Emphasis added.) Nevertheless, the court concluded that the Schmechels had affirmative notice because, first, and most importantly, the court found that "there was a locked gate on the easement with a 'No Trespassing' sign and the name 'Allen Prill' carved with a knife on the sign." According to the court, "[t]he gate and sign were actual, visible, open and notorious" and provided "glaring, 'in your face' notice to [the Schmechels] to

_____

[10] An unpublished opinion that is authored by a member of a three-judge panel and issued on or after July 1, 2009, may be cited for its persuasive value. WIS. STAT. RULE 809.23(3)(b).

investigate." The court also noted that the Schmechels "had property in the area since 2011 and Barbara …, further, indicated: 'Robert and Ruth Popp issued us keys to the gate on several instances so we could utilize the Purported Easement.'" Therefore, the court explained, the Schmechels "would have seen the sign since they used the gate." Finally, the Schmechels "were able to observe that the 'Purported Easement' provided access to the property owned by" the Trust.

¶22    Therefore, the circuit court determined that the Schmechels had affirmative notice under WIS. STAT. § 706.09(2)(a) because the gate and the sign were actual, visible, open, and notorious use of the easement and the above circumstances would have led a reasonable person to make a diligent inquiry, which would have revealed the existence of the easement.

¶23    Secondarily, the circuit court also observed that the Schmechels' trustee's "deed to their property was 'without warranty.'" This fact reinforces the conclusion that the Schmechels had affirmative notice because it is a factor in evaluating whether they complied with the statutory duty of "due and diligent inquiry." *See* WIS. STAT. § 706.09(2)(a). The Schmechels knew of the presence of a gate blocking access to their property from the road with a sign on that gate containing the name of a prior owner of an adjacent property. Barbara and others were previously given a key to use that gate to gain entrance to the property at the location of the easement, and, yet, the Schmechels accepted a trustee's deed to the property rather than a warranty deed, which suggests a failure to conduct a reasonable, diligent inquiry, as required by statute, and an assumption of the inherent risks. Under all these circumstances, we affirm the circuit court's determination that the Schmechels had affirmative notice of the Trust's easement.

14

¶24  The Schmechels do not appear to specifically dispute the circuit court's findings of fact underlying its decision; instead, they disagree with the court's ultimate conclusion that those facts provide affirmative notice of the Trust's easement. *See 3 Rivers Advert., Inc.*, No. 2010AP2295, ¶31 ("[W]hether the facts as found by the court meet the requirements of [WIS. STAT.] § 706.09(2)(a) is a question of law, which we review de novo."). First, the Schmechels argue that the court erred by holding that the reference to the easement in the Trust property's chain of title, without reference to the easement in the Schmechel property's chain of title, was sufficient to provide notice of the purported easement. According to the Schmechels, "[t]his fundamental error on the part of the trial court is a departure from existing law" and is "not in accordance with how title insurance companies underwrite title insurance policies."

¶25  The Schmechels' appellate arguments do not persuade us. First, they present no legal authority for the proposition they advocate: It is not the law in Wisconsin that an easement *must* appear in the servient estate's chain of title to give notice. If that were the law, the statutes or the case law would plainly say so, and the Schmechels provide no legal citations in support of this proposition beyond general statements of the law. *See, e.g.*, *In re Thulis*, 474 B.R. 668, 677 (Bankr. W.D. Wis. 2012) ("If a conveyance isn't in the chain of title, or referenced by something in the chain of title, a prospective purchaser need go no further as

15

the inquiry into the record is complete.").[11]  Instead, WIS. STAT. § 706.09 seeks to rectify the problem presented in this case to protect bona fide purchasers where an easement is not recorded in a purchaser's chain of title *provided the purchasers are not found to have prior notice of the easement.*

¶26     Further, the Schmechels incorrectly state that "the [circuit] court concluded that the existence of references to an easement in the chain of title for

---

[11] The Schmechels cite *In re Thulis*, 474 B.R. 668 (Bankr. W.D. Wis. 2012), in support of their position.  In that bankruptcy case, the debtors bought two lots—Lot 1 and Lot 2—and built a home on Lot 1.  *Id.* at 671.  The bank, however, erroneously listed Lot 2 as the collateral for the mortgage, rather than Lot 1.  *Id.*  The bankruptcy trustee later sold Lot 1 and objected to the bank's claim, arguing that the bank's mortgage did not cover Lot 1 and, therefore, the bank's claim was not secured by the sale proceeds.  *Id.* at 671-72.  The bank argued that the trustee had constructive notice of its mortgage on Lot 1 because "a physical review of the property would reveal that the house and street address are associated with Lot 1, not Lot 2, and that Lot 2 was vacant even though the bank's mortgage indicated that it covered 'Homestead Property'" and because the trustee had "all documents of record as to both lots" within the bankruptcy estates.  *Id.* at 673-75.

The United States Bankruptcy Court for the Western District of Wisconsin disagreed, concluding that the bank's mortgage was void and that its claim against the bankruptcy estates was unsecured.  *Id.* at 679.  According to the court, the bank argued for the application of WIS. STAT. § 706.09(2)(a) by attempting to "knit" facts together to prove "that if a purchaser looked hard enough, it could discover the bank's mortgage once it started checking out the records."  *In re Thulis*, 474 B.R. at 677.  The court explained, however, that in balancing the goals of "merchantability of title and the protection of legitimate but otherwise hidden land interests," "Wisconsin courts have imputed notice to purchasers only in limited situations, such as instances" where "issues with the property … were visible upon physical inspection."  *Id.* at 678.  Because "[t]he bank's mortgage was outside Lot 1's chain of title, and a subsequent purchaser of that lot would not have any affirmative notice of the bank's mortgage," the mortgage was void as against a subsequent purchaser for value.  *Id.* at 679.

The Schmechels focus their arguments on the district court's general discussion of the law and its preference for properly recording interests.  However, general legal propositions tell us nothing about how WIS. STAT. § 706.09(2)(a) may be applied to the facts of this case.  *In re Thulis* does not assist the Schmechels' argument, and, in fact, the district court's conclusion in that case lends support for the result the circuit court reached here.  The case demonstrates a limit of the strict requirements under § 706.09(2)(a) for a hidden mortgage.  Here, unlike an invisible financial lien, the presence of a structural gate and a sign were openly inconsistent with an unencumbered property and served to put the Schmechels on immediate affirmative notice under § 706.09(2)(a).

the [Trust] Property … was sufficient to provide notice of the existence of the Purported Easement," even without a "reference to any easement in the chain of title of the purported servient estate, the Schmechel Property." That is a fundamental misunderstanding of the court's conclusion as well as the court's application of WIS. STAT. § 706.09(2)(a). The Schmechels were not found to have notice solely *because* the easement was in the chain of title for the Trust property. The Schmechels were found to have affirmative notice of the easement "apart from the record" by operation of § 706.09(2)(a) as applied to the facts of this case.[12]

¶27 Next, the Schmechels argue that the gate and the sign did not provide affirmative notice of the easement. According to the Schmechels, "what matters for purposes of the good faith purchaser analysis is what the Schmechels knew of the property prior to the purchase," and "[t]he Schmechels knew that the Popps executed an affidavit stating that there were no unrecorded easements affecting the Schmechel Property"; "the location of the gate [was] such that any reasonable person would assume that it belong[ed] to the property owner" and not a third-party; "the 'No Trespassing' sign on the gate did not provide any specific notice to the Schmechels that the Trust claimed the Purported Easement" because

---

[12] The Schmechels also cite *Associates Financial Services Co. of Wisconsin v. Brown*, 2002 WI App 300, 258 Wis. 2d 915, 656 N.W.2d 56, in support of their argument. That case considered whether a party received a mortgage free and clear of an adverse claim to a property where a quit claim deed with an erroneous legal description—which was therefore improperly recorded—could have been discovered "through 'reasonable inquiry' … by using a computer system at the Register of Deeds's office." *Id.*, ¶¶1-2, 5. The court held that WIS. STAT. § 706.09(2)(b) "does not require purchasers for value to see if there is *some way*, in the absence of a proper recording, that an interest could *possibly* be discovered." *Associates Fin. Servs.*, 258 Wis. 2d 915, ¶14. The problem with the Schmechels' reliance on *Associates Financial Services* is that the case did not involve, apply, or even mention § 706.09(2)(a), which is the statutory paragraph at issue in this case. Accordingly, the case does not assist the Schmechels.

it was more plausible that "the Popps did not want anyone on their property without permission"; and Allen Prill's name carved on the "No Trespassing" sign did not provide notice because "the carving itself does not reference an easement and is so small as to be unnoticeable." Thus, the Schmechels assert that "the gate and sign were hardly the 'glaring, in your face notice' to the Schmechels that the trial court found on summary judgment."

¶28 The Schmechels' attempt to downplay the significance of the gate and the sign does little to sway our conclusion. Initially, we question the Schmechels' assertion that in this case "what matters … is what the Schmechels knew of the property prior to the purchase." Obviously, that statement is generally true when considering the issue of notice, but WIS. STAT. § 706.09(2)(a) creates a clear caveat that consideration of "what the Schmechels knew" is based on a duty of "due and diligent inquiry." In other words, a buyer cannot cover his or her eyes and ignore visual cues that someone is actively using the land, fail to investigate, and then argue that he or she did not know of the adverse claim prior to purchasing the property. *See* ***Hoey***, 256 Wis. 2d 347, ¶19.

¶29 With that consideration in mind, we agree with the Trust that Wisconsin courts have recognized that "visible physical features on the land can impose a duty to inquire into unrecorded interests." For example, ***Hoey*** involved an unrecorded lease of a billboard on land that Ted Ricci purchased. *Id.*, ¶¶1, 14. This court affirmed the circuit court's conclusion that Ricci had affirmative notice of a prior outstanding claim under WIS. STAT. § 706.09(2)(a), explaining that a large, immobile billboard was actual, visible, open, and notorious. ***Hoey***, 256 Wis. 2d 347, ¶¶16-17. Important for our purposes, we rejected Ricci's argument that "the sign was not visibly and openly located on his property" and "could be misunderstood or misconstrued by any purchaser." *Id.* We explained that "[t]he

fact that [Ricci] chose not to survey the property or investigate the precise location of [the property's] boundaries does not negate his affirmative notice under … § 706.09(2)(a)" because "Ricci [was] chargeable with knowledge of the property's boundaries" and "due and diligent inquiry, under the circumstances, would reasonably have disclosed [the] prior outstanding interest." *Hoey*, 256 Wis. 2d 347, ¶¶17-18, 20; *see also Quinn*, 306 Wis. 2d 686, ¶¶21-23 (concluding that a driveway provided affirmative notice and that the party would have discovered the easement had they inquired).

¶30    In this case, a large metal gate and a sign were located on the Schmechel property and were clearly designed to prohibit persons using the adjacent road from entering onto what appeared to be a wide path, on which vehicles had been driven, leading across a portion of the Schmechel property to the Trust property. The sign and gate were obvious physical markers of "use or occupancy" of the land. *See* WIS. STAT. § 706.09(2)(a). While the Schmechels suggest reasons why they could not have believed that the gate and sign were evidence of use or occupancy by a third party, the circuit court's factual findings that the gate and sign were "glaring, 'in your face' notice to [the Schmechels] to investigate," that the Schmechels would have seen the sign, and that it was clear that the gate "provided access to the property owned by" the Trust are not clearly erroneous based on the evidence.

¶31    We agree with the Trust that "[a] reasonable person, seeing a locked gate marked with another person's name and knowing that others [than the property owners] had access, would have [been put] on notice to look into other people's rights" and that the gate's "physical characteristics and longstanding use were more than sufficient to trigger a duty of inquiry." Accordingly, we independently conclude, and agree with the circuit court, that the Schmechels had

affirmative notice of the Trust's adverse claim and that the Trust's claim was not extinguished by operation of WIS. STAT. § 706.09(1) when the Schmechels purchased the property in 2019.

## II. The location and scope of the easement

¶32    The Schmechels next argue that the circuit court erred when it determined the location and the scope of the Trust's easement. According to the Schmechels, the easement descriptions in the Trust property's chain of title are too vague to define the location of the easement because the descriptions "lack … any existing points of reference to the items defining the purported easement" and are essentially "meaningless." They contend that the court erred by adopting the survey prepared by Smith because his review was "based merely upon the location of the gate, a path from Peninsula Lane, and tire marks" and because Smith used "ambiguous language" in the previous easement descriptions "without the benefit of any existing points of reference" to determine the location and scope of the easement. Therefore, the Schmechels assert that the court's "decision does not withstand scrutiny" and that we should "remand this matter … for further proceedings regarding the scope of the easement."

¶33    As noted above, the language referencing an easement that appeared in the Trust property's chain of title since the 1970s was as follows: "[A] permanent 20 foot wide access from private Town Road to the above described land on the location of present Old Railroad Grade and reserving unto Ella Popp the right to walk over the said described land on said Old Railroad Grade" and "an Easement from Town Highway on an old logging road, known as Camp 2 Road, to that part of said description laying South of McCaslin Brook." According to the Schmechels, Smith "failed to state that he found an old logging road or logging

railroad grade" and "[n]o witness at trial stated that [the above-described] features were visible on the land."

¶34 As an initial matter, we note that the Schmechels' arguments on this issue are, at best, underdeveloped. Apart from disagreeing with the circuit court's determination and adoption of Smith's survey, the Schmechels do not explain if there is conflicting evidence regarding the location and scope of the easement; what that conflicting evidence may be, such that the court should have relied on that alleged alternative evidence; or even what may be a possible alternative location or scope of the easement, given the documents in the Trust property's chain of title or any extrinsic evidence. Additionally, although the Schmechels challenge the court's conclusion with regard to the "scope" of the easement, they do not identify what that term means to them, i.e., whether they dispute the width of the easement, the use of the easement for "ingress and egress," or its use for vehicular travel.[13] We need not address arguments that are insufficiently developed. *See Papa v. DHS*, 2020 WI 66, ¶42 n.15, 393 Wis. 2d 1, 946 N.W.2d 17.

¶35 Nevertheless, we will address the Schmechels' argument regarding the scope and location of the easement as best we can discern it, but we will not abandon our neutrality to develop their arguments. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769

---

[13] We recognize that the Schmechels argued before the circuit court that permissive use of the easement "was limited, primarily, to pedestrian access across the right-of-way" and that the Schmechels mention once in the "Issues Presented for Review" section of their brief-in-chief that "whether the easement was intended for vehicular use" is an issue in this case. (Formatting altered.) However, the Schmechels do not continue their argument from the circuit court in their appellate briefs beyond that single reference to "vehicular use."

21

N.W.2d 82. Given that this case involved an express easement, the description of which was contained in the Trust property's chain of title, resolution of this issue requires interpretation of the documents creating the easement. *See* ***Konneker***, 326 Wis. 2d 268, ¶26. When interpreting an express easement, "the purpose of the court is to ascertain the intention of the parties." ***Id.*** (citation omitted). "The primary source of the parties' intent is what is written within the four corners of the deed." ***Id.*** "However, if the language of the deed is ambiguous, meaning it is susceptible to more than one reasonable interpretation, then the parties may introduce other evidence to demonstrate the intent behind the language." ***Id.***

¶36 Whether a deed or other document within a chain of title is ambiguous is a question of law we review independently. ***Id.***, ¶23 (citing ***AKG Real Est., LLC***, 296 Wis. 2d 1, ¶14). "The construction of an unambiguous deed is likewise a question of law," but "if the language of the deed is ambiguous, then the intent behind the language presents a question of fact," ***id.***, which we may not upset unless the circuit court's findings are clearly erroneous, WIS. STAT. § 805.17(2).

¶37 Here, the Schmechels argue that "[t]he reference to an easement in the Trust's chain of title is so ill defined that it is not capable of serving as a guide to the location or scope of the easement," and we take that to mean that the language is ambiguous.[14] The Trust does not appear to specifically dispute that

---

[14] We note that the only legal citation in this section of the Schmechels' brief-in-chief is to ***Borek Cranberry Marsh, Inc. v. Jackson County***, 2010 WI 95, ¶12, 328 Wis. 2d 613, 785 N.W.2d 615, which states that the meaning and scope of an easement is a question of law that we review de novo. This assertion of our standard of review, however, appears in conflict with the Schmechels' legal argument, which suggests that there is ambiguity in the Trust property's deed. If the language of the deed is ambiguous, the interpretation of the parties' intent behind the language is, as noted above, a question of fact, not of law.

claim because it asserts that the Schmechels' "argument is contradicted by substantial evidence in the record," including Prill's deposition testimony, Smith's affidavit, and "physical evidence"—i.e., extrinsic evidence. Therefore, we will assume, without deciding, that the language of the express easement is ambiguous, at least with regard to the location of the easement, given that the features or landmarks referenced in the Trust's chain of title have changed over time.

¶38 We conclude that the fact that the features or landmarks referenced in the original easement descriptions may have changed over time does not prevent the circuit court from determining the easement's scope and location or render the easement unenforceable or indefinite. As outlined above, when reviewing express easements, courts use the language of the easement and, if necessary, extrinsic evidence of the parties' intent.[15] At bottom, "the grant of an

_____

[15] In circumstances where an exact location of an easement cannot be determined, courts have applied different methods to resolve the issue. *See Atkinson v. Mentzel*, 211 Wis. 2d 628, 641, 566 N.W.2d 158 (Ct. App. 1997) ("When the location of a right-of-way easement is not defined by the grant, a reasonably convenient and suitable way is presumed to be intended, and the right cannot be exercised over the whole of the land."); *Werkowski v. Waterford Homes, Inc.*, 30 Wis. 2d 410, 417, 141 N.W.2d 306 (1966) ("If a location is not selected by either the servient or the dominant owner and they cannot agree upon a location, a court of equity has the power affirmatively and specifically to determine the location of the servitude." (citation omitted)); *Berg v. Ziel*, 2015 WI App 72, ¶16, 365 Wis. 2d 131, 870 N.W.2d 666 (explaining that an easement "location may be subsequently fixed by an express agreement of the parties or by an implied agreement arising out of the use of the easement by the grantee and acquiescence on the part of the grantor" (citation omitted)); 25 AM. JUR. 2D *Easements and Licenses* § 54 (2026) ("If the easement is reserved in the deed in general terms only, an ambiguity regarding the location of the easement exists, and the court looks to the surrounding circumstances, including subsequent agreements and the conduct of the parties, which may evidence the parties' intent."); *see also Anderson v. Quinn*, 2007 WI App 260, ¶¶29-30, 306 Wis. 2d 686, 743 N.W.2d 492 (stating that a conveyance must identify the property with "reasonable certainty" where the easement was challenged on statute of frauds grounds (citation omitted)); *Northrop v. Opperman*, 2011 WI 5, ¶5, 331 Wis. 2d 287, 795 N.W.2d 719 (holding, in a case determining the boundary line between two properties, that "[a]fter finding that the actual boundary line could not be determined from the deed and original monuments or markers," the circuit court properly "evaluated the evidence and established the boundary line based upon the best evidence available" (footnote omitted)).

access and egress easement necessarily implies the right to create and maintain a suitable access way." *Hunter v. Keys*, 229 Wis. 2d 710, 719, 600 N.W.2d 269 (Ct. App. 1999); *see also* *Atkinson v. Mentzel*, 211 Wis. 2d 628, 640, 566 N.W.2d 158 (Ct. App. 1997) ("Every easement carries with it by implication the right of doing whatever is reasonably necessary for the full enjoyment of the easement itself." (citation omitted)). Further, "acts, giving a practical construction to the grant, will be deemed to express the intention of the parties, and the courts will give it the construction that the parties themselves have put upon it." *Scheeler v. Dewerd*, 256 Wis. 428, 432, 41 N.W.2d 635 (1950) (citation omitted). "There is no surer way to find out what parties meant, than to see what they have done." *Jorgenson v. Northern States Power Co.*, 60 Wis. 2d 29, 35, 208 N.W.2d 323 (1973) (citations omitted).

¶39 Based on the law in Wisconsin, and pursuant to our standard of review, we conclude that the circuit court's findings were not clearly erroneous because there was ample evidence supporting the court's decision regarding the location and scope of the Trust's easement. The court determined that "[t]he gold standard in this case was the testimony and evidence provided by Allen Prill" and that "[t]he Affidavit of Harry Smith is, also, powerful evidence." Prill testified during his deposition regarding the location of the easement that he used for his "14-foot travel trailer" from 1991 to 2006, and he was able to identify the features named in the Trust property's deeds for the description of the easement—i.e., the "old logging road, known as Camp 2 Road" and the "present Old Railroad Grade"—on a map of the properties.

¶40 Further, Smith's affidavit stated that he went to the Schmechel property and observed that "[t]he path from Peninsula Lane to the gate was obvious"; that "topography in the area was very steep, [so] there was limited flat

area between the gate and an opening in the woods on the [Trust] property that had clearly been used as a roadway"; and that "tire marks on the earth of the [Trust] property directly in line with the gate on Peninsula Lane … made it easy to delineate the centerline of the easement." These factors as well as the legal descriptions in the deeds, Smith explained, "enabled [him] to map the location of the easement."

¶41     Based on this evidence, the circuit court adopted Smith's description and scope of the easement and concluded that the legal description of the easement was as follows:

> A 20' WIDE INGRESS/EGRESS EASEMENT, located on an existing trail, being part of the Northwest quarter of the Northwest quarter of Section 31, Township 33 North Range 16 East, Town of Lakewood, and part of the Northeast quarter of the Northeast quarter of Section 36, Township 33 North Range 15 East, Town of Townsend, all in Oconto County, Wisconsin ….

The Schmechels have presented no reason why it was clearly erroneous for the court to give the easement's language in the Trust's chain of title the same interpretation that the previous property owners and easement holders adopted. Therefore, we conclude that the court's findings are not clearly erroneous.

¶42     Finally, to the extent that the Schmechels argue that the circuit court erred by concluding that the scope of the easement included vehicular travel, we disagree. First, the easement language in the Trust property's chain of title unambiguously identifies "a permanent 20 foot wide access," which is much wider than necessary for only pedestrian traffic. Further, the easement language also "reserv[ed] unto Ella Popp the right to walk over the said described land." As the Trust argues, and we agree, "[i]f the easement were limited to pedestrian use, this additional reservation would have been unnecessary." Finally, the historical use

25

of the easement, as testified to by Prill, and the "tire marks on the earth," identified by Smith, support the reasonable inference that the easement was used for vehicular travel.  Therefore, the circuit court's finding that the easement was intended to be used for vehicular travel was not clearly erroneous.

¶43    In conclusion, in this hidden easement case, the circuit court appropriately relied upon the express easement in the Trust property's deed coupled with the extrinsic physical evidence providing affirmative notice of the easement, under WIS. STAT. § 706.09(2)(a), to conclude that the Trust has an easement for ingress and egress across the Schmechel property.  Because the physical evidence on the property showed an actual, visible, open, and notorious use of the easement, and the circumstances known to the Schmechels would have led a reasonable person to make a diligent inquiry that would have revealed the existence of the easement, the Schmechels cannot avoid the Trust's adverse claim. The court reasonably relied upon that same physical evidence and the Trust property's deed in making its findings of fact regarding the location and scope of the easement.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.